[Civ. No. 50761. First Dist., Div. Three. May 18, 1981.]

In re the Marriage of CHENETTE L. and CHARLES GLENN FLOCKHART.
CHENETTE L. FLOCKHART, Appellant, v.
CHARLES GLENN FLOCKHART, Respondent.

Counsel

Francis B. Mathews for Appellant.

Frederick L. Hilger, Sr., for Respondent.

Opinion

**WHITE, P. J.**—Chenette L. Flockhart (petitioner below) appeals from a portion of an interlocutory judgment of dissolution of marriage. At issue is a benefit payable to respondent Charles G. Flockhart pursuant to Public Law No. 95-250 (enacted Mar. 27, 1978 and designated as the Redwood Employee Protection Program, hereafter Act or REPP). The judgment declared it to be the separate property of respondent. The benefit in question is one which REPP refers to as a "weekly layoff benefit." (§ 207.)[1]

---

[1]Hereafter all section references are to title II of the Act. (Pub.L. No. 95-250.) Title I was codified as 16 United States Code Annotated section 79b et seq. Title II has not been codified.

The trial court found that the benefit was respondent's separate property. We agree.

On March 27, 1978, Public Law No. 95-250 was enacted and became effective. It expanded the Redwood National Park by adding some 48,000 acres, primarily in Humboldt, Del Norte and Trinity Counties. Because of perceived economic impact on the region, the Act included provisions "to provide for the maintenance of an income for directly affected employees for a limited time." (1978 U.S. Code Cong. & Admin. News, No. 1.)

Title II of the Act provides for a wide range of benefits to various classes of affected employees, including contributions to pension plans, relocation expense reimbursement, and vacation replacement benefits. An affected employee is specifically defined in the Act and generally is one who has lost his job because of the Redwood Park expansion. Eligibility for each of these benefits varies. The *only one of the Act's benefits at issue in this case* is the "weekly layoff benefit" set forth in section 207 which could also be paid in a lump-sum manner under section 208.

The following relevant facts were before the trial court. Respondent did not lose his job within the meaning of the Act prior to his separation from appellant. The only benefit respondent was receiving is the "weekly layoff benefit" (§ 207) which respondent is also eligible to take as a one-time payment. (§ 208.) Respondent is not a "short service employee" (§ 209), and he will not reach age 60 before October 1, 1984.

Appellant contends that the payments made to respondent are "in the nature of a pension" and are, thus, community property. We disagree.

■ It is axiomatic that "property attributable to community earnings must be divided equally when the community is dissolved." (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 847-848 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) ■ Under California law, pension rights "do not derive from the beneficence of the employer, but are properly part of the consideration earned by the employee." (*In re Marriage of Fithian* (1974) 10 Cal.3d 592, 596 [111 Cal.Rptr. 369, 517 P.2d 449].) That is, they are a form of deferred compensation for services rendered, a contractual right and thus "property." (*In re Marriage of Brown, supra*, 15 Cal.3d at p. 845.)

They may be distinguished from, for example, disability payments which an employee receives because of his *status* as a disabled person. The latter, of course, in California has been consistently held to be the separate property of the spouse who receives them, except for the few instances where the spouse, eligible for a pension, elects disability instead. (See *In re Marriage of Jones* (1975) 13 Cal.3d 457 [119 Cal. Rptr. 108, 531 P.2d 420]; *In re Marriage of Stenquist* (1978) 21 Cal.3d 779 [148 Cal.Rptr. 9, 582 P.2d 96]; *In re Marriage of Webb* (1979) 94 Cal.App.3d 335 [156 Cal.Rptr. 334].) Similarly, workers' compensation awards received after separation are the separate property of the designated spouse. (*In re Marriage of McDonald* (1975) 52 Cal.App.3d 509 [125 Cal.Rptr. 160].) The purpose underlying both is to presently compensate an individual for the loss of earnings compelled by the disability, not to pay him compensation for services previously rendered. (*Id.*, at p. 512.)

█ We similarly construe the benefit paid respondent to be present rather than deferred compensation.[2] Appellant, in fact, concedes that the goal of the Act "is to replace lost income." That is precisely what it is. The amount of respondent's replacement income (whether paid as a lump sum (§ 208) or as a periodic payment (§ 207) is reduced by *present* earnings. (See §§ 207(e) and 208(e).) He receives the payments, not because of any contractual agreement with his prior employer or the federal government, but because of his status as an "affected employee," essentially as a person disabled and prevented from present capacity to earn due to the disability of the industry.

Because we characterize the payments as respondent's separate property, we do not address the parties' discussion of federal supremacy issues. (See *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572 [59 L.Ed.2d 1, 99 S.Ct. 802].) Those issues are irrelevant here.

---

[2]Nor is the benefit comparable to the "employment termination" rights held to be a community asset in *In re Marriage of Skaden* (1977) 19 Cal.3d 679 [139 Cal.Rptr. 615, 566 P.2d 249], cited by appellant. There, the California Supreme Court found a contractual right for deferred compensation.

Analogous, however, is the incentive pay question in *In re Marriage of Wicks* (1978) 80 Cal.App.3d 329 [145 Cal.Rptr. 496]. There, a military doctor was designated as an eligible physician during marriage for the military's variable incentive pay. After separation, the physician elected to participate in the program. The court concluded that the pay was his separate property. Although his eligibility—his status—arose during marriage, the pay itself "was compensation and inducement for services to be performed in the period for which it was awarded." (At p. 333.) The bonus was apparently paid in advance of service; however, the failure to perform the services as agreed would require the physician to refund the appropriate amount of entitlement.

The judgment is affirmed.

Scott, J., and Barry-Deal, J., concurred.