[Civ. No. 5500. Fifth Dist. Feb. 25, 1983.]

In re the Marriage of JANICE DELL and JEFFREY L. WRIGHT.
JEFFREY L. WRIGHT, Appellant, v.
JANICE DELL WRIGHT, Respondent.

COUNSEL

Vizzard, Baker, Sullivan & McFarland and Allan H. McFarland for Appellant.

Henry C. Mack, Jr., for Respondent.

OPINION

ANDREEN, J.—The parties to this appeal were husband and wife. They entered into a property settlement agreement which neither discussed nor disposed of a sum of money paid to husband as severance pay. Wife instituted a proceeding under section 473 of the Code of Civil Procedure to obtain one-half of the amount paid. She prevailed in the trial court and husband appeals. Even if this had been a separate action, the dissolution proceeding would not have been res judicata. (*Miller* v. *Miller* (1981) 117 Cal.App.3d 366 [172 Cal.Rptr. 745].)

■ The primary question raised by this appeal is whether termination pay received by a spouse after separation is community or separate property. Other issues raised in husband's laborious brief need not be addressed because of our treatment of this contention.

The parties separated on June 23, 1976, after 12 years of marriage. On July 13, 1976, husband received $24,208.64 (net) from his employer, San Joaquin Community Hospital Corporation. Husband testified it was not a bonus for past work, but equaled approximately one year's pay and was given because of his termination due to harassment caused by wife and her father.

By stipulation, the deposition testimony of Joe B. Hurst, the hospital administrator, was received into evidence. It establishes that husband was employed at the hospital from 1972 until July 13, 1976, and had attained the position of assistant administrator. Wife's father was the hospital chaplain.

Hurst related that husband was paid his normal rate of pay for the first six months of 1976, and was then given a lump sum payment of $24,208.64 in July. He was paid that amount because he was leaving the hospital and in recognition that he would experience difficulty securing further employment. Hurst's testimony shows the lump sum payment was voluntary on the hospital's part and was not part of the employment contract. Hurst stated that part of the difficulties which he expected husband to encounter would be due to some actions he anticipated wife and her father, the chaplain, would take. They had threatened to ruin him financially, professionally, and personally. It was the

chaplain's behavior in response to the divorce which caused Hurst, on July 13, 1976, to recommend, and husband accept, termination of husband's employment at the hospital.[1]

Wife contends the termination payment was based on services rendered during marriage and therefore is community property. Husband contends it is separate property since the payment was made after separation. (Civ. Code, § 5118.[2])

Neither party has cited relevant case law. Independent research, however, has found persuasive precedent.

This case is analogous to *In re Marriage of Flockhart* (1981) 119 Cal.App.3d 240 [173 Cal.Rptr. 818]. The employee there was compensated by the United States government for loss of future earnings because his employment was affected by the expansion of Redwood National Park. He lost his job after his separation from his wife. The payment of replacement income was held to be the employee's separate property. He received the payments not because of any contractual agreement with his prior employer but because of his loss of employment in the timber industry. (At p. 243.)

Similarly, the instant case is analogous to cases involving disability benefits. Such payments serve the principal purpose of compensating the disabled employee for his/her injury, including prospective loss of earnings and dimin-

---

[1]We quote from Hurst's testimony: "[T]here was approximately one year's compensation paid at the time Mr. Wright ended his employment, not in consideration of work for that year or his past performance—I think this is important to remember— but in consideration of the fact that he was leaving our employment in a responsible position with a number of difficulties that I was aware of that he would be facing, particularly in the securing of other positions. And as it still remains, field positions in hospital administration are difficult, at best, for a person with Mr. Wright's previous background and experience.

". . . . . . . . . . . . . . . . .
"A. No, [counsel]. It was not considered a merit increase. I think that Mr. Wright was involved in some situations that I was acquainted with, and that I realized were going to affect his future ability to secure employment; that were going to give him an opportunity to experience a great deal of problems. And as a result of this, it is customary in administrative circles to grant termination pay, if you want to call it this—or not termination. Excuse me—pay for an employee when they leave a responsible position where there may be the expectation they're going to have trouble securing another position.

". . . . . . . . . . . . . . . . .
". . . Mrs. Wright indicated to me a number of situations in Mr. Wright's and her personal relationship; her attitude about his particular situation; what she anticipated doing about it. I received the same kind of profession from her father with certain indications as to the types of difficulty that would be raised in order that Mr. Wright would be sure to pay for whatever his experience was going to be."

[2]Civil Code section 5118 provides: "The earnings and accumulations of a spouse and the minor children living with, or in the custody of, the spouse, while living separate and apart from the other spouse, are the separate property of the spouse."

ished earning capacity. (*In re Marriage of Samuels* (1979) 96 Cal.App.3d 122, 128 [158 Cal.Rptr. 38].) Disability payments paid after separation consistently have been held to be the separate property of the spouse who receives them, except for that portion of the payment which is payable as a pension. (See *In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 784-785 [148 Cal.Rptr. 9, 582 P.2d 96]; *In re Marriage of Jones* (1975) 13 Cal.3d 457, 462-463 [119 Cal.Rptr. 108, 531 P.2d 420], disapproved on another point in *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]; *In re Marriage of Pace* (1982) 132 Cal.App.3d 548, 552-553 [183 Cal.Rptr. 314]; *In re Marriage of Samuels, supra,* 96 Cal.App.3d at p. 128; *In re Marriage of Webb* (1979) 94 Cal.App.3d 335, 340-342 [156 Cal.Rptr. 334].) Likewise, workers' compensation awards paid after separation are the separate property of the injured spouse. (*In re Marriage of McDonald* (1975) 52 Cal.App.3d 509, 512-513 [125 Cal.Rptr. 160].) The purpose underlying the separate property treatment of both is compensation for future loss of earnings, not payment for services previously performed. The rulings are not based on the fact that the right to the payments accrued after separation, for in each of the cases cited in this paragraph except *Pace,* the injury giving rise to the compensation occurred during coverture.

In the case at bench the termination payment was made in recognition that husband would encounter difficulty in securing future employment which would entail prospective loss of earnings. Since it was paid after separation it is clear it was separate property.

*In re Marriage of Skaden* (1977) 19 Cal.3d 679 [139 Cal.Rptr. 615, 566 P.2d 249] is distinguishable. Skaden was employed as an insurance agent. His contract provided that if he was terminated two or more years after the effective date, he would receive termination benefits consisting of specific percentages of net premiums, collected within a five-year period of termination, on policies he had sold prior to termination. It was held that since the right derived from the terms of the agent's agreement, it was a property right which was community in character. The court noted that, "Nothing in the agreement suggests that such benefits are 'consideration for termination.'" (At p. 687.) The court further stated: "We think it clear from the foregoing that the termination benefits contemplated by the subject contract were, like pension benefits, 'a form of deferred compensation for services rendered.' The right to these benefits 'derived from the terms of the employment contract' and under those terms became vested upon the expiration of two years after the date of execution. Manifestly, then, under the cases we have cited . . ., that right is property subject to division, to the extent of its community character, upon dissolution of the marriage. (Civ. Code, § 4800.)" (At pp. 687-688, fn. omitted.)

*Skaden* is inapposite, since the right to a percentage of the insurance premiums earned on policies issued during coverture was a contract right

payable *irrespective of continued employment.* Even though in the disability cases the payments were pursuant to a contract right, they were made because *the employment was no longer available.* The instant case is like the disability cases; the payment was made because the employee faced diminished earnings in the immediate future.

The judgment is reversed. The trial court is directed to vacate its judgment awarding wife one-half of the termination benefit and to enter a new judgment declaring the sum to be the separate property of husband.

Franson, Acting P. J., and Woolpert, J., concurred.