[No. 8460-1-II.  Division Two.  December 11, 1986.]

*In the Matter of the Marriage of* ILAH A. BISHOP, *Respondent, and* EUGENE E. BISHOP, *Appellant.*

*Thomas J. Majhan*, for appellant.

*Lane J. Wolfley*, for respondent.

REED, J.—Eugene E. Bishop appeals a summary judgment that awarded his former wife, Ilah, an interest in his lump sum severance payment from Crown Zellerbach. We reverse and remand for entry of summary judgment awarding the entire payment to Mr. Bishop.

When the Bishops were married in 1956, Eugene was employed at Crown's Port Townsend mill and had been since 1950. The parties were divorced May 25, 1983.

Eleven days after the divorce, Crown notified its workers of its intention to close the mill, apparently provided a buyer could be found. Closure actually occurred on December 20, 1983.

Under the terms of a collective bargaining agreement covering the period of June 1, 1981 to June 1, 1986, upon termination resulting from a mill closure, Eugene was given the option of either exercising preferential hiring rights by transferring to another of Crown's mills, or of receiving "severance pay." He elected severance pay. Based upon a formula using his years of continuous service as one factor, he received $19,622.40.

Although in the divorce settlement Ilah had surrendered

all rights to Eugene's company pension and retirement plans, no mention was made in the decree of severance pay. Accordingly, relying on the rule that community property not disposed of by a dissolution decree becomes the property of the former spouses as tenants in common, *Yeats v. Estate of Yeats*, 90 Wn.2d 201, 203, 580 P.2d 617 (1978), Ilah sought and obtained a judgment giving her one–half of the marital community's share of Eugene's separation pay, adjusted for taxes.

The sole issue is: How should severance pay be classified for purposes of division upon dissolution of a marriage?

We are hampered somewhat in our resolution of the issue presented for review because the matter comes to us on summary judgment. The record considered by the trial court consists only of the parties' depositions, conceding the facts as we have recited them, and copies of portions of the labor agreement pertaining to severance pay. No testimony was received from either Eugene's union or his employer regarding the purposes behind the severance pay provision. Consequently, we must determine from the face of the agreement and such law as we can muster—and there is very little on the subject—the true nature of severance or termination pay in the context of community/separate property concepts and marital dissolution.

Attempts at a definition of severance or termination pay are most often found in cases dealing with unemployment compensation, where the issue is usually whether such pay must be considered as "wages" in determining eligibility for benefits. *See, e.g., McGowan v. Administrator, Unemployment Comp. Act*, 153 Conn. 691, 220 A.2d 284 (1966). *See also* Annot., *Unemployment Benefits—Severance Pay*, 93 A.L.R.2d 1320 (1964). Consequently, and because the definitions oftentimes differ, depending upon the particular statute involved, these decisions are of little assistance.

It is of course now well settled that pension and retirement rights, whether vested or unvested, are community property to the extent the marital community contributes the labor of the spouse. *Wilder v. Wilder*, 85 Wn.2d 364,

534 P.2d 1355 (1975); *Farver v. Department of Retirement Sys.,* 29 Wn. App. 138, 629 P.2d 903 (1981), *aff'd,* 97 Wn.2d 344, 644 P.2d 1149 (1982) (under a different rationale); *In re Marriage of Pea,* 17 Wn. App. 728, 566 P.2d 212 (1977); *DeRevere v. DeRevere,* 5 Wn. App. 741, 491 P.2d 249 (1971). Thus, if items of this nature are overlooked in the dissolution proceedings, the parties become owners thereof as tenants in common and are entitled to partition. *Yeats v. Estate of Yeats, supra.* Ilah argues that the same treatment must be accorded to severance pay because "the right to receive severance pay is a valuable contractual right" and is a form of deferred compensation, *i.e.,* "remuneration for the service rendered." *See Barrett v. Weyerhaeuser Co. Severance Pay Plan,* 40 Wn. App. 630, 633, 700 P.2d 338 (1985), quoting *Owens v. Press Pub'g Co.,* 20 N.J. 537, 546, 120 A.2d 442 (1956).[1]

▮ Unlike pensions, retirement funds, and other types of true deferred compensation, *see In re Marriage of Skaden,* 19 Cal. 3d 679, 566 P.2d 249, 139 Cal. Rptr. 615 (1977), termination or severance pay, under the contract in question, is a mere expectancy, completely dependent for its payment upon the happening of a condition—the involuntary termination of Eugene's employment because of a mill closure. Should such an event never occur, there is no contractual right to payment. Thus, any chance that severance pay will be received terminates upon voluntary retirement, death, or termination of the employee for cause. *Commodore v. Armour & Co.,* 201 Kan. 412, 441 P.2d 815 (1968). Severance pay carries with it no contractual right to a payment that arises after a certain number of years of employment and which will definitely be paid in the future. *In re Marriage of Kuzmiak,* 176 Cal. App. 3d 1152, 222 Cal. Rptr. 644, *cert. denied,* 107 S. Ct. 276 (1986); *In re Mar-*

---

[1]As is true of unemployment compensation decisions, our focus in *Barrett* was not upon the nature of severance pay as community or separate property. Thus our use of the definition from *Owens v. Press Pub'g Co.* cannot be taken as authority for the proposition that, for dissolution classification purposes, such pay is "remuneration for the service rendered."

*riage of Wright,* 140 Cal. App. 3d 342, 189 Cal. Rptr. 336 (1983); *In re Marriage of Flockhart,* 119 Cal. App. 3d 240, 173 Cal. Rptr. 818 (1981).[2]

Severance pay compensates the wage earner for the economic exigencies and detriments resulting from permanent separation from service without fault on his part. Such a payment is intended primarily to alleviate the consequent need for economic readjustment and to compensate the worker for certain losses attributable to dismissal. It has been said that the objectives of dismissal or severance pay are to ease the employee's financial burden while looking for new employment, to partially compensate for loss of seniority rights, pension rights, and other benefits hinging on employment and to compensate for retraining or acquiring new skills. *See Ackerson v. Western Union Tel. Co.,* 234 Minn. 271, 48 N.W.2d 338, 25 A.L.R.2d 1063 (1951). *See also Severance Pay Provisions in Collective Bargaining Agreements,* 70 Monthly Lab. L. Rev. 384 (April 1950).

In *In re Marriage of Kuzmiak, supra,* the court found that the legislative intent behind military separation pay was not to compensate for past services, but to assist the member financially during the transition period from separation to employment in the private sector.[3]

> The separation pay is a contingency payment for an officer who is career committed but to whom a full military career may be denied. It is designed to encourage him to pursue his service ambition, knowing that if he is denied a full career under the competitive system, he can count on an adequate readjustment pay to ease his reentry into civilian life.

*In re Marriage of Kuzmiak,* 176 Cal. App. 3d at 1157. *See*

---

[2]We do not know if labor contracts preceding the current agreement contained severance pay provisions. If not, it is difficult to see how the marital community could have had even an expectancy, at least before 1981.

[3]The *Kuzmiak* court found a community interest in the husband's military separation pay only because he reenlisted and, under the federal statutory scheme, his retirement benefits, in which the community would have an interest, would be charged—reduced—by the amount of separation pay received.

*also Perez v. Perez,* 587 S.W.2d 671 (Tex. 1979) (former husband's military separation pay, received several years after divorce, held his separate property).

Although the amount of Eugene's severance pay is correlated with his many (32) years of past service, we believe that the pay does not serve as additional compensation for those past services, so as to qualify as "deferred compensation." In our view, such a formula merely recognizes that, as a worker gets older, the consequences of involuntary dismissal become more devastating in terms of the economic impact. We all know that as workers age they become less employable. Many face mandatory retirement upon reaching a certain age. Severance pay so computed also can be looked upon as a reward—a gratuity—to a good and faithful servant. Although his labor is that of the marital community in the general sense, the quality of service and personal devotion to duty is something that only the individual can give. It is something of value over and above the community's contribution, and cannot truly be considered as having been onerously traded by the community. Dismissal pay plans also help maintain the goodwill of employees and the community generally. Monthly Lab. L. Rev., *supra.*

Having determined that severance or termination pay is not a form of deferred compensation, but is primarily intended to alleviate the economic fallout from unexpected dismissal, we now must determine how such pay should be treated in marital dissolutions. Because it is a mere expectancy and not a contract right and has no present value, it is not "property" in the true sense. Thus, if dismissal has not occurred before dissolution of the marriage, the characteristics we have enumerated dictate that it should go with the worker–spouse to whom it is attached. Consequently, the possibility of such a payment being made in futuro should not be considered in striking a fair and equitable division of property. Thus, when and if the divorced spouse acquires the right to severance pay upon dismissal, that spouse alone is entitled to the whole of such payment. *In re*

*Marriage of Wright, supra.* The rule of *Yeats* simply does not apply.

If, on the other hand, dismissal occurs during the marriage, as was the case in *In re Marriage of Roark,* 34 Wn. App. 252, 659 P.2d 1133 (1983),[4] and the former mere expectancy or contingency has ripened into a right to payment or payment is received, it has become property and must be characterized and considered by the court in making a fair and equitable division of all property, both community or separate.

Because, as we have shown, severance pay is intended primarily to alleviate financial loss, and that loss ordinarily will fall upon the marital community until it is dissolved, to that extent the payment should be considered community property. To the extent the payment will soften the blow upon the spouse enduring dismissal after dissolution, *i.e.,* upon his or her future economic circumstances, including loss of wages, it should be considered separate property. The severance pay to that extent simply substitutes for a loss of wages which would be the separate or personal property of the dismissed person and to which his former spouse has no claim. RCW 26.16.140.[5] This treatment of severance pay accords with the rationale of *In re Marriage of Brown,* 100 Wn.2d 729, 675 P.2d 1207 (1984), where the court characterized the wife's tort recovery "in relation to the right violated, *i.e.,* the wife's *separate* right to personal security." 100 Wn.2d at 736. The *Brown* court also said:

> We note that in most cases, compensation for lost wages and diminished earning capacity will be community property, because the wages which would have been earned during the marriage but for the injury are com-

---

[4]In *Roark,* this court was not called upon to determine the true nature of severance pay. The issue was confined to whether entitlement was conditioned on continued unemployment and thus too speculative for consideration in dividing the marital property.

[5]Although we do not consider it dispositive, if Eugene had elected to be rehired instead of taking severance pay, it is clear his wages would have been his separate property. RCW 26.16.140.

munity. *Colagrossi v. Hendrickson,* 50 Wn.2d 266, 272, 310 P.2d 1072 (1957). However, if a marriage is dissolved after the injury is sustained, it may be that the recovery will compensate the injured spouse in part for wages which would have been earned after separation, and would therefore have been separate property pursuant to RCW 26.16.140. Under our holding today, such damages would be separate. Thus, the separated spouse who must receive compensation from a tortfeasor is placed in the same position as a separated spouse who is paid wages by an employer.

100 Wn.2d at 738. *See also In re Marriage of Kuzmiak, supra,* where the court said:

If a marriage subsists at the time the service member is involuntarily discharged, the loss of employment becomes a community loss and separation pay serves to ameliorate this loss. If the service member is not married at the time of discharge, however, the adjustment to civilian life is his alone to make. Accordingly, the separation pay should be his separate property.

176 Cal. App. 3d at 1157.

Eugene's severance pay, received after divorce, is not community property left undivided by dissolution. Consequently Ilah has no interest therein as a tenant in common with Eugene. Such payment is Eugene's personal or separate property and belongs to him in toto.

Reversed and remanded for entry of summary judgment in Eugene's favor in accordance herewith.

WORSWICK, C.J., and ALEXANDER, J., concur.