OPINION
Marilyn J. Gram Hanson appeals from an order characterizing her former husband's enhanced early retirement benefits as separate property. *Page 861 
 BACKGROUND
Marilyn J. and Allen E. Gram were married on May 28, 1960. Allen started work for the San Diego Union-Tribune Newspapers (Union-Tribune) on October 14, 1968, and began accumulating retirement credit in the Copley Press, Inc., retirement plan on November 1, 1969.
The couple separated on September 15, 1981. On April 19, 1983, the parties entered into a marital termination agreement giving the superior court continuing jurisdiction over the community interest in Allen's Union-Tribune employment benefits and defining a formula for their division. The formula required the total number of days employed during marriage be divided by the total number of days employed on the date of retirement. This figure was multiplied by the monthly retirement benefit to compute the community share of the payment. Marilyn's share of the benefit was one-half that amount.
In August 1991, the San Diego Union and San Diego Tribune newspapers announced plans to merge. The merged operation would not employ all workers from the two newspapers. In an attempt to avoid involuntary dismissals, the newspapers offered three voluntary termination incentive plans: an enhanced retirement option, an early retirement option and a voluntary separation option.
The early retirement option was available to those in departments where a need for staff reduction had been identified, who were 55 years of age as of January 31, 1992, and who had at least 10 years of service as of that date. A limit was placed on the total number of employees who would be accepted under the program and employees were given 45 days to decided if they wished to apply. The company would determine the actual date of retirement of those accepted based on its business needs.
The early retirement option added five years of service towards total credited service up to a maximum of thirty years, and added five years to the retiree's age up to a maximum age of sixty-five years, the latter to eliminate or reduce the reduction in benefits caused by early retirement. The age and service year modifications were used only to determine the early retirement benefit, and actual age and service years were used to determine all other benefits. The early retirement program also gave the employee the option of receiving an enhanced monthly payment or an enhanced lump-sum payment of the entire early retirement benefit. The lump-sum payment of retirement benefits was not a normal provision of the Copley Press retirement plan.
Each employee eligible for the enhanced early retirement plan received an individualized statement of benefits. Allen's statement indicated if he retired *Page 862 
at actual age 65, his monthly retirement benefit would be $1,063.77; if he retired under the unenhanced early retirement scheme, his monthly payment would be $688.47; and if he retired under the enhanced early retirement plan, his monthly payment would be $1,252.14. Allen's individualized statement of benefits estimated the lump-sum value of the unenhanced retirement benefit as $82,137 and the lump-sum value of his enhanced early retirement as $149,384.
Under the plan Allen was credited with 27 years of service and his age was deemed to be 64 years. Allen elected to retire under the enhanced early retirement plan and receive a monthly benefit.
In January 1992, Marilyn sought an order to show cause why Allen's enhanced benefits for early retirement should not be treated as community property. After a hearing the trial court determined the enhanced portion of the retirement benefits was Allen's separate property.
 DISCUSSION (1) The sole issue in this case is the characterization of the enhanced early retirement benefit accepted by Allen. If the benefit is a form of deferred compensation for services rendered, then it is a community asset and must be included in the calculation of Marilyn's share of the monthly retirement benefit. (See In re Marriage of Skaden (1977) 19 Cal.3d 679, 686 [139 Cal.Rptr. 615, 566 P.2d 249]; In re Marriage of Horn (1986)181 Cal.App.3d 540, 544-547 [226 Cal.Rptr. 666].) If, on the other hand, the enhanced retirement benefit is present compensation for Allen's loss of earnings, then it is separate property to which Marilyn has no right. (See In re Marriage of Flockhart (1981)119 Cal.App.3d 240, 242-243 [173 Cal.Rptr. 818]; In re Marriageof Wright (1983) 140 Cal.App.3d 342, 344-345 [189 Cal.Rptr. 336] ; In re Marriage of Kuzmiak (1986) 176 Cal.App.3d 1152, 1157-1159 [222 Cal.Rptr. 644]; In re Marriage of DeShurley
(1989) 207 Cal.App.3d 992, 994-996 [255 Cal.Rptr. 150]; In reMarriage of Lawson (1989) 208 Cal.App.3d 446, 450-451 [256 Cal.Rptr. 283].)
To place a compensation scheme into a category is not always easy. The schemes are designed for business purposes and may not have as their main concern community property issues. Characterization is, nonetheless, necessary and in a series of cases the courts of this state have defined the general considerations applicable to that process.
 1. Law
In two cases courts have concluded the proceeds of severance plans to be community property. *Page 863 
In re Marriage of Skaden, supra, 19 Cal.3d 679, involved the characterization of termination pay payable to an insurance agent under an employment contract entered into during the marriage. The agreement provided that after two years of employment a terminated or voluntarily departing agent received installment payments based on the percentage of net premiums collected within a five-year period after termination on policies credited to the agent. Such payments were subject to conditions tied to the agent's competitive activities. (Id. at pp. 683-685.)
The court found the termination payments in Skaden to be community property. The court rejected the contention the payments were "consideration for termination" because they were not so characterized in the contract and because the termination of employment could be involuntary. The court also rejected the argument the payments were consideration for noncompetition since the amount of compensation related not to the degree of compliance with the noncompetition condition but rather to the policies credited to the agent. The court concluded the termination payments were akin to pension benefits, were a form of compensation for services rendered and, thus, were community property. (19 Cal.3d 679 at pp. 685-688.)
In In re Marriage of Horn, supra, 181 Cal.App.3d 540, this court concluded proceeds of a contract-based termination payment scheme were community property. The collective bargaining agreement between the National Football League and the National Football League Players Association contained a lump-sum severance pay provision. The amount of the payment was determined by the player's years of service, the payment had to be returned if the player reentered football within 12 months of retirement and if the player died, his beneficiary or estate received the severance pay. (Id. at pp. 542-543.)
We concluded that because the severance pay in Horn was an absolute contractual right determined by years of service, it was a form of deferred compensation and, thus, community property. We found it irrelevant, given the structure of the scheme, that the payments were intended to aid the player in his transition from professional athletics to more prosaic employment. (181 Cal.App.3d at pp. 547-550.)
Several other cases have found the proceeds of termination plans to be separate property.
In In re Marriage of Flockhart, supra, 119 Cal.App.3d 240, the issue was the characterization of a "weekly layoff benefit." In adding extensive property to a national park, the federal government adversely impacted a regional *Page 864 
economy and caused a loss of jobs. As compensation to affected workers, the government provided a wide range of benefits, including contributions to retirement plans and relocation compensation. Eligibility for the various benefits varied. The act creating the benefit plan stated it did so to provide for the maintenance of income for a limited time. The only benefit at issue in the case was the weekly layoff benefit. The benefit was designed to replace lost income and the payment amount was reduced by present earnings. (Id. at pp. 242-243.)
The court noted the weekly layoff benefit was not contractually based but arose as a compensation for a loss of capacity to earn based on the disability of an industry. In this respect the benefits were analogous to disability payments and workers' compensation awards made after separation which were both treated by the law as present compensation, not deferred compensation for past service. The court concluded the weekly layoff benefit was separate property.
In In re Marriage of Wright, supra, 140 Cal.App.3d 342, the contested benefit was a non-contract-based lump-sum termination payment given a hospital administrator on his termination from employment. The payment was made because of the anticipated difficulty the employee would have in finding new employment. (Id. at pp. 343-344.)
The court, looking to Flockhart, noted the similarity between the facts before it and the disability and workers' compensation cases and determined the termination payment to be separate property. The court noted the key factor was that in both situations the payment was designed to compensate for the loss of future earnings and not as payment for services previously performed. (119 Cal.App.3d at pp. 344-345.)
In In re Marriage of Kuzmiak, supra, 176 Cal.App.3d 1152, the court dealt with the characterization of military separation pay. A lump-sum separation payment is given to officers who do not qualify for promotion and who are forced to leave the military. The payment is based on a formula using years of service as one factor. The court noted while years of service is used to compute the payment, the legislative history of the act indicates the payments were intended not as compensation for past service but to ease the officer's adjustment to civilian life. The court concluded if the officer was unmarried at the time of termination, the adjustment was the officer's alone and the severance pay separate property. (Id. at pp. 1157-1158.)
This court again had occasion to consider the proper characterization of a termination benefit in In re Marriage ofDeShurley, supra, 207 Cal.App.3d 992 *Page 865 
. In that case a bankruptcy court ordered pilots striking Continental Airlines be given the option of returning to work or receiving severance pay. The severance pay was computed by multiplying the pilot's years of service by $4,000. Husband, after separation from wife, opted for severance pay. Payment was made over a period of time using a set schedule. (Id. at pp. 993-994.)
We reviewed the existing authority on the issue and noted the character of a termination benefit is determined by considering all relevant factors. We noted the airline severance payment did not arise from a contract but from a court order, the payment represented an option between returning to work or receiving the termination benefit and that the amount of payment was based on years of service. We concluded the severance payment was not intended as a form of deferred compensation but rather was present payment for loss of future earnings. We concluded there was no absolute right to the payment since a return to work would foreclose receipt of the benefit and the use of years of service was not determinative of the character of the payment. We held the termination benefit in that case to be separate property. (207 Cal.App.3d at pp. 995-996.)
Finally, in In re Marriage of Lawson, supra, 208 Cal.App.3d 446, the court dealt with yet another variation of the termination benefit characterization issue. In that case Shell Oil Company planned a merger of divisions. Husband was offered the option of participating in a severance program specifically designed for those affected by the consolidation or continuing in a job that would likely exist for only two or three more years. Husband opted for the severance program. (Id. at p. 448.)
The purpose of the severance plan was to provide a severance allowance. The severance plan agreement signed by husband indicated the separation allowance was not part of the employee's regular benefit program and did not affect his pension. The severance allowance was computed as two weeks of salary for each year of service not to exceed one year's base pay. Voluntary termination, death, disability or discharge before the termination date set by Shell disqualified the employee from participation in the plan. However, if death occurred after termination but before the entire amount of the allowance was paid, the remainder would be paid to the employee's beneficiaries or estate. (208 Cal.App.3d at pp. 448-449.)
After reviewing the pertinent authority and the factors there considered, the court found husband's termination allowance to be his separate property. The court noted there was no contractual right to the allowance, and while qualification for the plan did not require the occurrence of some involuntary *Page 866 
circumstance, the features of the plan made it very similar to a true severance benefit for employer-determined termination program. (208 Cal.App.3d at pp. 450-453.)
The indefinite and qualified nature of the plan convinced the court it was like the termination benefit given in the Wright case, a voluntarily granted noncontractual payment intended as future replacement compensation for employees pursuing new jobs and to ease transition. The court concluded the use of years of service was not determinative since fair play might dictate longevity of employment be a factor in determining the amount of payment while not a condition for participation. (208 Cal.App.3d at pp. 453-454.)
 2. Characterization
After review of the cited authorities we conclude the trial court erred in finding the enhanced early retirement benefit selected by Allen to be separate property. While it is true no preexisting contractual obligation required the giving of the early retirement benefit, we do not find this determinative. The Union-Tribune offered several voluntary termination incentive plans. The record on appeal reveals the particulars only of the enhanced early retirement option but the names of the others suggest their makeup: the newspapers established enhanced retirement, enhanced early retirement and voluntary separation options.
Each of these plans was clearly designed to deal with the needs of employees of differing ages, years of service and life expectations. A relatively young employee with the company for a short time would be best served by a true severance plan making possible transition to a new company or new profession. Older employees, with lengthy service and eligible for retirement or nearly eligible for retirement would find more useful an enhanced retirement or early retirement plan.
The enhanced early retirement option accepted by Allen reasonably reflected the most likely life plan of an employee of his age and years of service, i.e., continued employment, accumulation of credit towards retirement and retirement. The enhanced early retirement plan merely compressed this process by immediately granting the employee additional age and service credit.
The plan essentially gave the employee a reasonable version of the retirement benefit expected had the merger not threatened employment and the continued accumulation of retirement credit. The enhanced early retirement plan was, therefore, fundamentally not a present payment for a loss of earnings; it was a part of, and intended to be, the realization of Allen's retirement expectation and thus a form of deferred compensation for services *Page 867 
rendered. As such the enhanced retirement benefit should have been included in the computation of Marilyn's community interest in the retirement payment.
 3. Computation of Benefit
As noted a formula was agreed on by the parties for the computation of the community share of Allen's retirement benefit. An important part of the formula is the division of the total number of days Allen was employed during marriage by the total number of days he was employed at the time of retirement. The figure rendered is then multiplied by the monthly retirement benefit to determine what portion of the benefit is attributable to the time of employment which occurred during marriage, i.e., the part of the payment that is community property.
We have concluded Allen was given an enhanced early retirement benefit to essentially compensate him for not being able to continue work and continue to accumulate retirement credit. While this may be a retirement benefit in which the community should share, we conclude it also should add to Allen's total years of service, i.e., the enhanced benefit is computed by adding five years to service, thus resulting in a higher percentage of the monthly retirement benefit being attributable to Allen's years of service after the dissolution of the marriage. If the theory of the early retirement plan was to give Allen close to the retirement benefit that would have followed five additional years of actual employment, those years would have increased the amount of the retirement benefit attributed to his nonmarried years and, thus, would have reduced the community property part of the retirement payment. Thus, to apply our reasoning consistently, the computation of the community interest in the enhanced payment should take those additional years into account by adding them to Allen's total years of employment in the benefit share formula.
The judgment is reversed and the matter is remanded to the trial court for a computation of the community interest in Allen's retirement benefits consistent with this opinion.
Huffman, J., and Nares, J., concurred. *Page 868