[No. G015072. Fourth Dist., Div. Three. May 14, 1996.]

In re the Marriage of JANICE L. and GEORGE MORRIS FRAHM.
JANICE L. FRAHM, Appellant, v.
GEORGE MORRIS FRAHM, Respondent.

**COUNSEL**

Nancy Bunn for Appellant.

Jeri R. McKeand for Respondent.

**OPINION**

**SONENSHINE, J.**—Janice L. Frahm appeals from a qualified domestic relations order entered in favor of her former husband, George Morris Frahm.

### I.

Janice and George married in 1965 and separated in 1977. Their interlocutory judgment of dissolution awarded Janice one-half of the community

property portion of George's GTE California, Inc. (GTE) retirement "based on fourteen years and six months employment or 23.25 points of credit." In 1993, GTE, wishing to reduce its work force, offered incentives to certain employees who agreed to terminate their employment or take early retirement. George chose the latter option, receiving $83,143 in addition to $285,468 in retirement benefits.

The only issue we consider is whether all of the $83,143 is George's separate property, as the trial court concluded, or some portion of it is community property as Janice maintains.

## II.

We first note the growing significance of the issue we address. Increasingly, employers are offering significant financial incentives to employees to voluntarily separate themselves from the workplace. Long-term employees are particularly targeted. Many of these workers are parties to dissolution judgments defining their former spouses' community property rights to employment benefits. Are these benefits paid to encourage an employee to leave his or her employment community or separate?

Courts in characterizing other employment termination benefits have held, "If the benefits are deferred compensation for past earnings, the benefits are community property; if they are present compensation for loss of earnings, they are separate property." (*In re Marriage of DeShurley* (1989) 207 Cal.App.3d 992, 994 [255 Cal.Rptr. 150].) In characterizing a benefit, no one factor is determinative; rather, a court is to consider all relevant circumstances. (*In re Marriage of Horn* (1986) 181 Cal.App.3d 540, 544-547 [226 Cal.Rptr. 666].)

For example, in *In re Marriage of Skaden* (1977) 19 Cal.3d 679, 686 [139 Cal.Rptr. 615, 566 P.2d 249], the court held termination benefits payable to an insurance agent were a form of deferred compensation for past services because they derived from the employment contract and the amount of the benefit related to the number of policies sold during employment. The *Horn* court came to the same conclusion about a severance benefit paid to a professional football player. Conceding this money could be helpful in the transition from professional sports to other employment, the court nevertheless dismissed this as incidental result. (*In re Marriage of Horn, supra,* 181 Cal.App.3d at p. 549.) The court focused instead on the relationship between the amount of the benefit and the number of played seasons, the employee's absolute contractual right to its receipt or to assign it to his or her heirs. (*Id.* at p. 547.)

Conversely, in *In re Marriage of Kuzmiak* (1986) 176 Cal.App.3d 1152 [222 Cal.Rptr. 644], *In re Marriage of Wright* (1983) 140 Cal.App.3d 342 [189 Cal.Rptr. 336], and *In re Marriage of Flockhart* (1981) 119 Cal.App.3d 240 [173 Cal.Rptr. 818], the courts looked *to the purpose of the payment* in determining whether it was intended for past services or compensation for future lost income. After considering benefits paid to a retiring Air Force officer, a discharged hospital administrator, and a displaced government employee, the courts concluded they were separate property because they were intended as financial buffers to help involuntarily discharged employees.

Courts have not considered a tie between the benefit amount and the years of employment as necessarily indicative of its community property status. In *DeShurley*, the court noted a striking airplane pilot's severance pay related to his years of service, but concluded other factors were more significant. Specifically, the court focused on "the following characteristics: (1) [the benefit] is not derived from a contract but rather stems from a court order; [and] (2) it represents an option between returning to work and foregoing the right to return to work in exchange for a payment . . . ." (*In re Marriage of DeShurley, supra,* 207 Cal.App.3d at p. 995.)

While instructive, none of the above cases addresses the precise issue we consider. Indeed, only two courts have examined benefits offered as an incentive to leave the work force. In *In re Marriage of Lawson* (1989) 208 Cal.App.3d 446 [256 Cal.Rptr. 283], the parties married in 1960 and divorced in 1985 when wife was awarded her proportional community property interest in husband's Shell Oil employment benefits. In 1986, Shell, wishing to reduce its work force, offered him a "separation allowance [which] was not a part of [his] 'regular or normal salary or benefit program . . . .' The plan did not affect his pension benefits in which Wife shared . . . . In order to participate and be eligible . . . [he] was required to execute a release in favor of Shell for any claim arising from his . . . employment termination. . . . [He] was required to continue to work until Shell decided his . . . services were no longer needed. The amount of the severance allowance was computed on a basis of two weeks' salary for each year of service, but in no event to exceed one year's basic pay. Voluntary termination, death, disability, or discharge prior to the termination date scheduled by Shell disqualified the employee from participation [in] and receipt of any separation pay. However, if a former employee died after termination but before receipt . . . , it would be paid to the surviving spouse, children or estate. . . . Shell reserved the right to revoke or alter the plan and the right to accept or reject an employee's participation . . . ." (*Id.* at p. 449.)

Husband accepted the offer and the trial court confirmed wife's community property interest in the benefit. The Court of Appeal reversed. "The question presented here is whether Husband had accrued an absolute right to receive the separation allowance or whether it is more analogous to the disability cases and the *Flockhart-Wright-Kuzmiak* line of cases." (*In re Marriage of Lawson, supra,* 208 Cal.App.3d at p. 452.) The court found the plan was a true severance benefit: the employer determined if and when termination was to occur; husband had no absolute contractual right to the pay but rather it was "wholly conditional on [his] signing the release and agreeing to leave when [the employer] determined the time was right." (*Id.* at p. 453.)

Discounting the relationship between the amount of the benefit and the number of years of employment, the court observed "undue emphasis should not be placed on the fact that one of the bases for determining the amount of the allowance is the employee's years of service. In fashioning a severance allowance, fair play may dictate that longevity of employment be factored into the formula for arriving at a monetary figure, even though the right to participate in the plan does not accrue from past services." (*In re Marriage of Lawson, supra,* 208 Cal.App.3d at p. 454.)

The court came to the opposite conclusion in *In re Marriage of Gram* (1994) 25 Cal.App.4th 859 [30 Cal.Rptr.2d 792] where it considered a severance benefit paid to Mr. Gram after his employer merged its operation with another company. Concerned it would be unable to continue to employ all of its workers, the new business offered certain employees three voluntary termination incentive plans: an enhanced retirement option, an early retirement option and a voluntary separation option. (*Id.* at p. 861.)

Mr. Gram chose the enhanced early retirement option offered to employees in departments where a need for staff reduction had been identified. To qualify the employee had to be 55 years of age with a minimum of 10 service years. This option added five years to the employer's credited service and age, thus enabling the employee to retire at an earlier age and receive an additional monthly benefit or an enhanced lump sum payment.

Mr. Gram, based on his age and service years, was already eligible for a monthly retirement benefit in the amount of $688.47. The offered incentive gave him the choice of receiving either that amount plus the incentive benefit of $563.67 or a lump sum payment. He chose the former, thereby receiving a monthly payment of $1,252.14. (*In re Marriage of Gram, supra,* 25 Cal.App.4th at pp. 861-862.)

The trial court characterized the enhanced portion of the benefit as separate property, but the reviewing court reversed. It acknowledged there

was no contractual right to the enhancement but concluded this was not determinative. (*In re Marriage of Gram, supra*, 25 Cal.App.4th at p. 866.) The court focused instead on the purpose of each of the three plans. It conceded the "record on appeal reveal[ed] the particulars only of the enhanced early retirement option" (*ibid.*) but concluded "the names of the others suggest[ed] their makeup . . . . [¶] . . . A relatively young employee with the company for a short time would be best served by a true severance plan making possible transition to a new company or new profession. Older employees, with lengthy service and eligible for retirement or nearly eligible for retirement would find more useful an enhanced retirement or early retirement plan. [¶] The enhanced early retirement plan accepted by [Mr. Gram] reasonably reflected the most likely life plan of an employee of his age and years of service, i.e., continued employment, accumulation of credit towards retirement and retirement. [This] . . . plan merely compressed this process by immediately granting the employee additional age and service credit. [¶] The plan essentially gave the employee a reasonable version of the retirement benefit expected had the merger not threatened employment and the continued accumulation of retirement credit. [This] plan was, therefore, fundamentally not a present payment for a loss of earnings; it was a part of, and intended to be, the realization of [the] retirement expectation and thus a form of deferred compensation for services rendered." (*In re Marriage of Gram, supra*, 25 Cal.App.4th at pp. 866-867.) The court therefore concluded the enhanced retirement benefit should have been included in the computation of the community property interest in the retirement payment.

The court did not end its discussion there however. Wishing to be consistent in its reasoning, it held the community interest in the enhanced payment should be computed by adding the five years of credited service to the total number of years of employment in the benefit share formula. (*In re Marriage of Gram, supra*, 25 Cal.App.4th at p. 867.) Thus, the community "receives no benefit whatsoever from the additional 5 service years . . . [except] to share in the plan's creation of a fictitious five-years-older age for Mr. Gram." (Reddall, *The Characterization and Apportionment of Early Retirement Enhancements in Pre-Judgment Cases—Again* (1994) 17 Fam. L. News 24.)

## III.

We now turn to the particulars of the severance benefit paid to George. GTE offered its employees a choice of plans designed to meet the individual employee's needs. A declaration filed by a GTE attorney stated: "GTE management elected within the past year to reduce and restructure the GTE work force. This is an ongoing project. It was decided by management that

one of the ways to accomplish this was to establish a voluntary separation benefit program. [¶] . . . The purpose of GTE's 1993 Voluntary Separation Incentive Program (VSIP) was to allow certain eligible employees an incentive to voluntarily terminate their employment from GTE in order to reduce the size of the work force. In addition to the voluntary separation program, GTE has eliminated and/or will eliminate certain positions. GTE has terminated, and may be terminating more, GTE employees. In fact, certain GTE employees who elected not to accept the voluntary separation program have been involuntarily terminated because of the changes taking place in the company."

George, who was then 48 and a 30-year employee, chose the voluntary separation incentive program (VSIP) plan offered to all participants in GTE's salaried pension plan regardless of their age so long as they had been hired before May 21, 1992. George could receive either his regular enhanced monthly retirement benefit based on his years of service and age or an enhanced lump sum benefit. He chose the latter, receiving $285,468 in addition to the incentive payment of $83,143. He also received his employee stock ownership plan benefits and GTE savings plan. To qualify George needed only to accept the offer and complete a pension application within a specified time period. The money was then owed to him or his estate if he died prior to its receipt.

After a hearing, the trial court concluded: "This issue herein is analytically similar to that tried in the case of [*In re Marriage of Lawson, supra,*] 208 [Cal.App.3d] 446. The characterization issue hinges on whether the VSIP benefit is in the nature of deferred compensation for past services or present compensation for loss of future earnings. [(*Ibid.*)] [¶] The VSIP benefit appears to resemble the latter, and is the separate property of the respondent. The purpose of the program is to reduce the size of the GTE work force. While voluntary on the part of the employee, if one chooses not to participate he/she is in jeopardy of loss of employment. The program provides assistance in transition from GTE to other jobs. There are various qualifying conditions for the program making the right to receive the benefit indefinite. The fact that the program is based, in part, upon prior service is not determinative of whether the benefit is for service previously rendered. [*In re Marriage of Horn, supra,*] 181 [Cal.App.3d] 540, 547. [¶] The program, in essence, provides compensation for electing to forego future employment. And, compensation for future employment, of course, is the separate property of the earning spouse."

## IV.

██ We conclude the trial court was correct in finding the incentive pay is George's separate property. However, while we affirm, we do so for reasons other than those relied upon by the judge.

As Janice points out, many aspects of this benefit could support a community property finding. The amount of the payment was to some extent based on years of rendered service. George was neither disabled nor forced to seek other employment; once he accepted the offer, GTE was contractually obligated to pay him or his estate. However, as George argues, he did not have a contractual right to it. And because it was intended to encourage him to voluntarily leave the workplace it could easily be labeled compensation for loss of future income.

We are back to where we began. Is it a community or separate property benefit? Looking for guidance from the above discussed cases is not particularly rewarding. Family law commentator, Steve Adams, says it best. The cases said "they were following one bright-line rule or another, but in fact they've simply looked at the menu of factors that point toward separate or community property, selected one or two, and then molded them into a result. The factor that carries the day in one case may not be determinative in the next. . . . About the only 'bright line' in these cases is the differentiation between compensation for past services and compensation for future lost wages." (Comment, 1994 Cal.Fam.L.Rep. 6298.)

Applying the reasoning of these cases to our facts works as well as trying to fit a square peg into a round hole. As Adams recognizes, the results are inconsistent. For example, the *Horn* court found the payment's contractual basis, rather than its purpose, determinative of its character. In *Gram*, the court discounted the absence of a contract and focused instead on the benefit's purpose. And in *Lawson*, the court ignored the tie between the benefit and length of employment because the right to the benefit resulted from conditions beyond the husband's control and accrued after the marriage ended. (Comment, *supra*, 1994 Cal.Fam.L.Rep. 6298.)

The past services or future compensation test is inapt for determining the character of the benefit, and looking to its purpose is equally unavailing. Both focus on the wrong question; that which motivates an employer to offer an incentive is an irrelevant consideration because "[t]he schemes are designed for business purposes and may not have as their main concern community property issues." (*In re Marriage of Gram, supra*, 25 Cal.App.4th at p. 862.) Indeed, most of the factors the courts deemed important in the above-described cases are inapt because the courts either ignored or misapplied the principles set forth by our Supreme Court in *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].

In *Brown*, the court considered whether any portion of a nonvested pension was community property. The court explained it had "always recognized that the community owns all pension rights attributable to employment during marriage. [Citations.]" (*In re Marriage of Brown, supra*, 15

Cal.3d at p. 844.) Nevertheless, at least in dictum, it had classified nonvested pension rights as mere expectancies and therefore "not assets subject to division on dissolution of the marriage." (*Ibid.*)[1]

The *Brown* court retreated from that position. "[T]he defining characteristic of an expectancy is that its holder has *no enforceable right* to his [or her] beneficence. [¶] [But] . . . under California law such benefits 'do not derive from the beneficence of the employer, but are properly part of the consideration earned by the employee.' [Citation.] Since pension benefits represent a form of deferred compensation for services rendered [citation], the employee's right to such benefits is a contractual right, derived from the terms of the employment contract. Since a contractual right is not an expectancy but a chose in action, [it is] a form of property [citations], . . . [and] an employee acquires a property right to pension benefits when he [or she] enters upon the performance of his [or her] employment contract." (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 845, original italics.)

The court concluded, "Pension rights, whether or not vested, represent a property interest; to the extent that such rights derive from employment during coveture, they comprise a community asset subject to division in a dissolution proceeding." (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 842.) "[T]*he joint effort that composes the community and the respective contributions of the spouses that make up its assets, are the meaningful criteria.*" (*Id.* at p. 851, italics added.)

*Brown*'s message is very simple. An employment benefit, whether or not vested, is community property to the extent a right to it accrues during marriage. Such is not the case here. The right to all of George's *other* benefits derived from George's employment. The severance payment, however, resulted solely from GTE's beneficence.

This same reasoning precludes considering this benefit ancillary to and therefore a part of those employment rights which were earned during marriage. Because GTE wanted George to leave its work force, it offered him two incentives to do so. First, it allowed him to receive that to which he was already entitled, albeit at an earlier time. Second, GTE offered him an *additional payment.* Although the sum of this incentive payment is somewhat

---

[1]The court explained, "In . . . dissolution cases . . . the term 'vested' has acquired a special meaning; it refers to a pension right which is not subject to a condition of forfeiture if the employment relationship terminates before retirement." (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 842, fn. omitted.)

dependent on the length of employment, *the right* to receive it is not.[2] Janice received her community property interest in the employment benefits which accrued during and derived from the time of marriage. She is entitled to no more.

The judgment is affirmed. Respondent shall recover his costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 21, 1996.

---

[2]It is for this reason the relationship between the amount of the payment and the years of employment is irrelevant. The time rule determines the amount of the community share. It does not determine the character of the benefit. Stated another way, a court first looks to see if the right to the payment accrued during marriage. If so, the time rule determines the extent of the community interest in the payment. But if the right to the payment did not derive from employment, it is separate property.