Filed 7/1/24  Marriage of Burrell CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re Marriage of DANIEL and LISA BURRELL. | 2d Civil No. B330819 (Super. Ct. No. D396974) (Ventura County) |
| DANIEL BURRELL, Respondent, v. LISA BURRELL, Appellant. | |

Lisa Burrell challenges the trial court's determination that she is not entitled to any portion of the payments made to Daniel Burrell pursuant to the terms of his settlement agreement with Jersey Mike's Franchise Systems, Inc.  Lisa[1] contends the court: (1) misconstrued a development agreement Daniel had with

---

[1] We use the parties' first names for clarity.  No disrespect is intended.

Jersey Mike's, and (2) admitted evidence in violation of (a) the parol evidence rule, (b) mediation confidentiality, and (c) attorney-client privilege. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Peter Cancro is the owner of Jersey Mike's sandwich shop. In 1997, Cancro spoke with Daniel about opening a Jersey Mike's franchise on the West Coast. In anticipation of doing so, in 2002 Daniel and a partner founded JM West, Inc. JM West opened a Jersey Mike's franchise in Camarillo in 2003. It opened a Ventura location the following year.

In 2009, JM West and Jersey Mike's signed a development agreement stating that JM West would be Jersey Mike's Los Angeles area developer for the next 20 years. As area developer, JM West would guide each new franchisee through the process of signing a franchise agreement, finding real estate, constructing a store, hiring and training staff, and getting store operations off the ground. In exchange, JM West would receive $5,000 per new location opened plus 2 percent of the location's gross sales.

JM West helped open about 150 Jersey Mike's locations in California and Arizona. It also helped train Jersey Mike's managers and develop national advertising campaigns. Because of JM West's efforts, California is now Jersey Mike's biggest market.

Daniel and Lisa married in August 2015. When they married, Daniel was earning between $1 million and $1.5 million each year from the development agreement and his ownership interests in various Jersey Mike's franchises.

Jersey Mike's terminated the development agreement with JM West in December 2017. The following August, Jersey Mike's, JM West, and Daniel negotiated a settlement agreement

2

in which Jersey Mike's agreed to pay Daniel $5.5 million in monthly payments plus another $500,000 after he sold his franchise ownership interests. Jersey Mike's also agreed to pay $750,000 to JM West to resolve a third-party legal action. In exchange, Daniel and JM West agreed to sell all their ownership interests in Jersey Mike's franchises, terminate the development agreement, and release all potential claims against Jersey Mike's.

Daniel could not find suitable business opportunities in the years following the termination of the settlement agreement. Proceeds from the settlement (about $2 million in total) supported Daniel and Lisa until they separated in January 2021.

During the subsequent dissolution proceedings, the trial court held a bifurcated trial on the character of the proceeds Daniel received from the settlement agreement. At trial, Jersey Mike's general counsel testified that Cancro entered into the agreement because of Daniel's significant contributions to the growth of Jersey Mike's and to make up for Daniel's loss of future royalties. The payments were "to reward [Daniel] for all the work he did over the 15 years in bringing California to a place where it is."

The trial court found the general counsel's testimony credible and concluded the settlement agreement "was not a severance package." Thus, the proceeds paid to Daniel under the agreement were not community property because they were not "income earned during the marriage." Instead, the proceeds rewarded Daniel for his contributions to Jersey Mike's growth.

Additionally, even if the settlement proceeds were partially community property there would be no community interest remaining: "This was a marriage of short duration. The vast

majority of the efforts that [Daniel] put into Jersey Mike's both as a franchise owner and as an area director took place before the marriage."  Portioning out the settlement proceeds over the years of Daniel's relationship with Jersey Mike's, the court calculated that about $900,000 of the proceeds were earned during the years Daniel and Lisa were married.  The two spent more than $2 million of the proceeds on community expenses during that time, however, leaving nothing more to divide.

DISCUSSION

Lisa contends the trial court erred when it concluded that she is not entitled to any of the proceeds from the settlement agreement.  We disagree.

" 'In California, property acquired prior to marriage is separate, while property acquired during the marriage is presumed community property.' " (*Patrick v. Alacer Corp.* (2011) 201 Cal.App.4th 1326, 1339, alterations omitted.)  Thus, if employment termination benefits are characterized as " 'deferred compensation for past earnings' " earned during the marriage, they are presumed community property.  (*In re Marriage of Frahm* (1996) 45 Cal.App.4th 536, 538 (*Frahm*).)  But if the benefits are characterized as " 'present compensation for [a] loss of earnings' " that would be realized after the marriage ends, they are separate property.  (*Ibid.*)  "[N]o one factor is determinative," however; a trial court must instead "consider all relevant circumstances" when characterizing termination benefits.  (*Ibid.*)  We review that characterization for substantial evidence. (*Patrick*, at p. 1340.)

Substantial evidence supports the trial court's characterization of the payments made to Daniel pursuant to the terms of the settlement agreement.  Jersey Mike's general

4

counsel said that the payments made under the agreement were to reward Daniel for his contributions to Jersey Mike's growth and to make up for Daniel's loss of future revenue. Daniel started working with Jersey Mike's in 2002, 13 years before he and Lisa married. Thus, to the extent the payments made under the agreement compensated Daniel for those 13 years of service, they are his separate property. The payments are also separate property to the extent they seek to compensate Daniel for the loss of earnings that would be realized after his marriage to Lisa ended in early 2021. It is only to the extent the payments compensated Daniel for earnings made during the two years his marriage to Lisa overlapped with his work for Jersey Mike's (August 2015 to December 2017), or compensated Daniel for the loss of earnings that could have been realized during the three years that his marriage to Lisa continued (December 2017 to January 2021), that the payments could be presumed community property. (See *Frahm*, *supra*, 45 Cal.App.4th at p. 544 [termination benefit "is community property to the extent a right to it accrues during marriage"].) But the trial court found that Daniel and Lisa spent the entirety of the community portion of the settlement.

Lisa does not directly challenge that finding, but argues a greater percent of the settlement should have been deemed community property since the development agreement entitled Daniel, through JM West, to two years of payments after its termination. Lisa misreads the development agreement. The development agreement guaranteed two years of post-termination payments *if Jersey Mike's decided not to offer JM West a new agreement at the conclusion of the original agreement's 20-year term*. That scenario did not occur. Jersey

Mike's terminated the development agreement early—for cause. That terminated JM West's rights under the development agreement, including any guarantee of the two years of post-termination payments.

Lisa next argues the trial court violated the parol evidence rule when determining whether the payments made under the settlement agreement are separate or community property.  But the parol evidence rule " 'generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter[,] or add to the terms of an integrated written instrument.' " (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343.)  The settlement agreement here is silent regarding whether the payments made to Daniel are separate or community property. The trial court's admission of testimony from Jersey Mike's general counsel to help it characterize those payments thus did nothing to alter or add to the terms of the agreement.

Finally, Lisa argues admitting the general counsel's testimony violated both mediation confidentiality (see Evid. Code, § 1119) and attorney-client privilege (see Evid. Code, § 917).  As to the former argument, Evidence Code section 1119 is not relevant because there was no mediation here.  As to the latter, Lisa did not object to the general counsel's testimony on this basis.  Her argument is forfeited.  (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 726.)  It also lacks merit because Lisa is not the holder of Jersey Mike's attorney-client privilege and could not have asserted it.  (*HLC Properties, Ltd. v. Superior Court* (2005) 35 Cal.4th 54, 60-61.)

DISPOSITION

The trial court's April 19, 2023, ruling that Lisa Burrell is not entitled to any portion of the payments made to Daniel

6

Burrell under the terms of the settlement agreement with Jersey Mike's is affirmed. Daniel shall recover his costs on appeal.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:



GILBERT, P. J.



YEGAN, J.


7

Michael Lief, Judge

Superior Court County of Ventura

_____

Laurie Peters & Associates and Laurie Peters for Appellant.

Negley Law, John J. Negley, Jr.; Ferguson Case Orr Paterson, Wendy C. Lascher and John A. Hribar for Respondent.