[No. A041343. First Dist., Div. Three. Mar. 6, 1989.]

In re the Marriage of PRISCILLA and NEIL H. LAWSON.
PRISCILLA LAWSON, Respondent, v.
NEIL H. LAWSON, Appellant.

COUNSEL

Michael M. Levine for Appellant.

F. Michael Hanson for Respondent.

OPINION

**MERRILL, J.**—In this case we decide whether the postdissolution employment separation allowance paid to a former spouse should be characterized as community or separate property.

I

Neil and Priscilla Lawson (Husband and Wife) were married on July 1, 1960, and separated June 11, 1985. Judgment of dissolution was entered on July 29, 1986. Husband's employment with Shell Oil Company commenced in 1958, two years before his marriage, and continued until January 1, 1987. Pursuant to a stipulated order, Wife's proportional community property interest in Husband's pension benefits was awarded to her.

In November 1986, Husband received notice from his employer of the merger of two Shell divisions and the resulting elimination of two account sales manager positions, including his own. Shell initiated the merger in order to reduce or consolidate the work force or improve the efficiency of the work force. Shell offered Husband the option of participating in a severance program specifically designed for those employees affected by the merger.[1] In opting to accept the offer, Husband considered the fact that his employment in the newly merged division was likely to continue only for another two to three years at which time there was no assurance of a similar program. Husband also determined he would have less difficulty in seeking new employment if he left Shell at the age of 52, rather than at the age of 55. This was the first time Husband had been offered or been made aware of Shell's severance program for excess employees.

The following plan provisions are pertinent to our analysis. The purpose of the severance plan offered to Husband was "to provide a separation allowance for certain employees" affected by the work force reduction

---

[1] The plan was titled "Shell Oil Company's Special Severance Program for Certain Fuel Sales Account Managers or Certain Jobber Territory Managers Located in California or Washington."

following the merger. The release and settlement agreement provided that the separation allowance was not a part of the employee's "regular or normal salary or benefit program as an employee." The plan did not affect his pension benefits in which Wife shared pursuant to the stipulated order. In order to participate and be eligible for the severance allowance, the employee was required to execute a release in favor of Shell for any claim arising from his or her employment termination. The termination had to have occurred sometime between November 1, 1986, and January 31, 1987. Yet the employee was required to continue to work until Shell decided his or her services were no longer needed. The amount of the severance allowance was computed on a basis of two weeks' salary for each year of service, but in no event to exceed one year's basic pay. Voluntary termination, death, disability, or discharge prior to the termination date scheduled by Shell disqualified the employee from participation and receipt of any separation pay. However, if a former employee died after termination but before receipt of the entire separation allowance, it would be paid to the surviving spouse, children or estate. The allowance would not be paid to the beneficiaries if the employee died before the effective date of termination. Finally, Shell reserved the right to revoke or alter the plan and the right to accept or reject an employee's participation in the plan. The plan was signed by Shell on October 17, 1986.

Wife successfully petitioned the superior court for a division of the separation allowance. In its order the court stated Husband's " 'separation allowance' is subject to division between the parties (time line rule division) as are his pension benefits, that allowance being part of an 'early retirement package' being calculated on a longevity formula, and being structured more as a retirement benefit rather than a severance benefit (it does not seem to be fashioned to assist him during a temporary period of unemployment) . . . ." Husband was ordered to pay Wife a 43.75 percent community interest in the separation allowance. He appeals.

## II

■ Husband argues that the separation allowance must be characterized as his separate property for several reasons. He submits that the right to participate in the plan was not absolute, and it did not arise from any employment contract with Shell, and was for the purpose of compensating him for his future loss of earnings and living expenses while seeking new employment. Our analysis of the characteristics of the separation allowance leads us to agree with Husband and reverse the judgment.

■ It is axiomatic that "property attributable to community earnings must be divided equally when the community is dissolved" (*In re Marriage*

*of Brown* (1976) 15 Cal.3d 838, 847-848 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]), while the earnings and accumulations of a spouse after separation are separate property. (Civ. Code, § 5118.)

■ California courts have reasoned that pension benefits must be considered a part of the consideration earned by the employee. (*In re Marriage of Fithian* (1974) 10 Cal.3d 592, 596 [111 Cal.Rptr. 369, 517 P.2d 449], cert. den. *sub nom. Fithian* v. *Fithian* (1974) 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41] disapproved on other grounds in *In re Marriage of Brown, supra,* 15 Cal.3d at p. 851, fn. 14.) Accordingly, the right to receive pension benefits arises out of the employment agreement and is a form of deferred compensation for services rendered. (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 845.) The contractual right to future pension benefits, though nonvested and unmatured, is thus a divisible community interest to the extent they are earned by the time, skill and effort of a spouse during marriage. (*Id.,* at pp. 844, 846.)

■ Similarly, vested termination benefits which arise in an employment agreement represent a divisible community property interest, to the extent they are community in nature. (*In re Marriage of Skaden* (1977) 19 Cal.3d 679, 682 [139 Cal.Rptr. 615, 566 P.2d 249].) The insurance agency agreement in *Skaden* provided that the benefits, a percentage of the premiums, were payable in the event of "termination" two or more years after its effective date and that termination occurred upon the written notice of either party or the death of the agent. The high court based its analysis on whether the compensation represented a form of deferred compensation for services rendered. The court reasoned that there was no distinction between vested rights to contractual pension benefits and contractual termination benefits. Both were paid because of the employment contract. More importantly, the *Skaden* court found it significant that nothing in the agency agreement suggested such benefits were " 'consideration for termination' " as the payments would be made even if the termination was involuntary, e.g., upon the agent's death. Finally, the court rejected the argument that the benefits should be characterized as consideration for the agent's posttermination compliance with certain conditions. Noting that the agreement provided for payment directly related to the number and character of the policies credited to him upon termination, the court determined payment was truly deferred compensation for services rendered. (*Id.,* at pp. 685-687.)

■ In contrast, our courts have consistently held disability payments to be the separate property of the spouse who receives them, except for that portion payable as pension benefits. (*In re Marriage of Flockhart* (1981) 119 Cal.App.3d 240, 243 [173 Cal.Rptr. 818]; *In re Marriage of Robinson* (1976) 54 Cal.App.3d 682, 684-686 [126 Cal.Rptr. 779]; see *In re Marriage of*

*Stenquist* (1978) 21 Cal.3d 779, 782 [148 Cal.Rptr. 9, 582 P.2d 96].) An employee receives disability payments because of his or her status as a disabled person. Likewise, workers' compensation awards after separation have been characterized as the separate property of the recipient spouse. Courts have analyzed that "[t]he purpose underlying both is to presently compensate an individual for the loss of earnings compelled by the disability, not to pay him compensation for services previously rendered." (*In re Marriage of Flockhart, supra,* at p. 243, citing *In re Marriage of McDonald* (1975) 52 Cal.App.3d 509, 512 [125 Cal.Rptr. 160].)

Analysis according to the function of the particular payment has been a consistent factor in the severance or termination benefit cases. *Flockhart* concerned termination benefits paid by the federal government to an employee adversely affected by the expansion of a national park. The "weekly layoff benefits" were paid in accordance with a federal statute. It was evident that the purpose of the statute was to replace lost income as the recipient's payments were reduced by present earnings. The Court of Appeal equated the benefits there to disability payments and workers' compensation as they were not made pursuant to an agreement but because of the former spouse's status as an "affected employee." (*In re Marriage of Flockhart, supra,* 119 Cal.App.3d at pp. 242-243.) The court distinguished *Skaden* on the ground that the employment termination payments in that case involved a contractual right for deferred compensation. (*Id.,* at p. 243, fn. 2.)

In *In re Marriage of Wright* (1983) 140 Cal.App.3d 342 [189 Cal.Rptr. 336], the court held that the one-time voluntary payment of employee termination pay by the employer hospital constituted the separate property of the recipient. In *Wright,* husband's employment was terminated because of harassment by wife and her father, a chaplain at the hospital. The payment equaled almost one year's pay, was not part of an employment contract, and was paid to the employee in anticipation of the difficulties he was likely to encounter in finding new employment. The court distinguished *Skaden* because the contractual payments there continued "*irrespective of continued employment.*" (*Id.,* at pp. 345-346.) Instead *Wright* found the voluntary termination payments to be analogous to the disability benefit and workers' compensation cases. "Such [disability] payments serve the principal purpose of compensating the disabled employee for his/her injury, including prospective loss of earnings and diminished earning capacity. [Citation.]" (*Id.,* at pp. 344-345.)

Similarly, in *In re Marriage of Kuzmiak* (1986) 176 Cal.App.3d 1152 [222 Cal.Rptr. 644], certiorari denied *sub nom. Kuzmiak* v. *Kuzmiak* (1986) 479 U.S. 885 [93 L.Ed.2d 252, 107 S.Ct. 276], the appellate court held military

separation pay for an officer's involuntary discharge was the separate property of the service member. The primary inquiry made by the *Kuzmiak* court was whether the purpose of the statutory separation pay was to compensate for past services or to ease the adjustment into civilian life. (*Id.,* at pp. 1157-1158.) The statute's legislative history indicated that the payment was intended to assist the service member during the transition period to private employment. Further, if the service member reenlisted and later became eligible for retirement pension, he or she was required to reimburse the separation pay from the retirement payments as the purpose of the statute would not be served. Because of this reimbursement feature and the fact that husband reenlisted in the service, *Kuzmiak* concluded that wife had a community interest in the separation pay to the extent it constituted an unmatured right to husband's retirement pension. (*Id.,* at pp. 1158-1159.) However, the court made it clear that without reenlistment and reimbursement from his longevity retirement pension, the separation pay is the separate property of husband.

In contrast, contractual severance pay to a retiring National Football League player based on the number of seasons worked was held to be deferred compensation for services rendered and thus community property in *In re Marriage of Horn* (1986) 181 Cal.App.3d 540, 547-548 [226 Cal.Rptr. 666]. The Court of Appeal compared the particular characteristics of the severance pay at issue there with the *Flockhart-Wright-Kuzmiak* line of cases and concluded the absolute nature of the right to receive such payment was determinative of its community property characterization. Certain features of the severance pay contract provision emphasized its deferred compensation status, e.g., that the right to receive the payment was contractual and arose after a certain number of years of employment, that the lump sum payment would definitely be paid in the future upon his permanent retirement, that the player would receive the severance pay in addition to his retirement, that his beneficiaries or estate would receive the monies upon the player's death, and that even though reimbursement was required if the player returned to professional football within 12 months, he would ultimately receive the payment. *Horn* distinguished the disability cases and the *Flockhart-Wright-Kuzmiak* line of cases on the basis that they involved no absolute contractual rights to the severance pay. As Horn was married during the time that he was accruing the right to receive the severance pay, it was found to be a divisible community interest. (*Id.,* at pp. 544-548.)

▮▮▮▮ The question presented here is whether Husband had accrued an absolute right to receive the separation allowance or whether it is more analogous to the disability cases and the *Flockhart-Wright-Kuzmiak* line of cases. We turn to the particular characteristics of the severance plan.

In contrast to the absolute contractual right to the pay in *Horn,* the pay here was wholly conditional on the employee signing the release and agreeing to leave when *Shell* determined the time was right. If Husband was reemployed by Shell, the plan required repayment of that portion in excess of the normal salary he would have received had he stayed on the job. It does not appear that the separation allowance would then be repaid upon his final retirement.

While Husband did not qualify as a recipient because of some involuntary circumstance, such as a disability, work-related injury or layoff, neither was his participation in the plan wholly in his control. Because of the feature denying payment upon voluntary or involuntary termination prior to the date set by Shell, the plan was more in the character of a true severance benefit for employer-determined termination.

The indefinite character of the right to receive the payment is also demonstrated by the various qualifying conditions. Termination had to occur during a three-month period in order for the employee to qualify. Voluntary termination or involuntary termination, i.e., by death or disability, prior to Shell's predetermined termination date disqualified the employee from the plan. The employee's beneficiaries would not receive the separation allowance if the employee died before Shell's termination date. Finally, the plan was subject to Shell's revision or revocation.

These factors convince us that the right to receive the separation pay did not accrue during the marriage and that the plan was more in the nature of the voluntary noncontractual payment made by the employer in *Wright.* This is emphasized by the provision reserving to Shell the right to accept or reject employees as participants and the fact that the plan was not presented to employees until late October 1987.

Moreover, that the pay was intended as future replacement compensation for long-term employees pursuing new jobs or professions is evidenced by two plan provisions. First, the plan itself states its purpose is "to provide a separation allowance for certain employees" affected by the work force reduction following the merger. Additionally, the repayment provision upon reemployment demonstrates that the pay was for transition purposes only.

It is clear that Husband's separation pay should have been confirmed to him as his separate property and that the trial court erred in granting Wife's petition. Unlike *Skaden* and *Horn,* the instant case does not involve a contractual right for deferred compensation. The characteristics of the plan indicate to us that it was intended as future compensation during the

employee's transition period. Further, like *Flockhart, Wright* and *Kuzmiak,* the separation allowance here was dependent upon Husband's status during a very limited time period.

We find no significance in the fact that the payment was made at two times over a one-year period. Furthermore, undue emphasis should not be placed on the fact that one of the bases for determining the amount of the allowance is the employee's years of service. In fashioning a severance allowance, fair play may dictate that longevity of employment be factored into the formula for arriving at a monetary figure, even though the right to participate in the plan does not accrue from past services. Finally, the plan features are highly analogous to the payments of disability benefits or workers' compensation as the payment is designed to replace present lost wages. (See Blumberg, *Marital Property Treatment of Pensions, Disability Pay, Workers' Compensation, and Other Wage Substitutes: An Insurance or Replacement, Analysis* (1986) 33 UCLA L.Rev. 1250, 1266.)

### III

Wife further submits that certain language in the plan transforms the payment into a true retirement benefit and is therefore subject to a community property division. Reference is made to a description which states that the plan "is designed to be an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ('ERISA')." Wife argues that as the separation allowance was intended to be covered by ERISA, the payment must be considered a retirement benefit or pension. However, the ERISA reference merely reflects certain provisions of the act and the Code of Federal Regulations, to the effect that employee severance benefits are considered "welfare plans" and are thus governed by ERISA. (See 29 U.S.C. § 1002(1)(B); 29 C.F.R. § 2510.3-1(a)(3) (1987); *Gilbert* v. *Burlington Industries, Inc.* (2d Cir. 1985) 765 F.2d 320, 324-325.) ERISA is not limited to retirement or pension plans.

### IV

The judgment is reversed. The trial court is directed to vacate its judgment awarding Wife a 43.75 percent share in Husband's separation

allowance and to enter a new judgment declaring the separation allowance to be the separate property of Husband.

White, P. J., and Strankman, J., concurred.