261 N.J. Super. 689 (1992)
619 A.2d 692
GLORIA RYAN, PLAINTIFF,
v.
JOHN TAYLOR RYAN, DEFENDANT.
Superior Court of New Jersey, Chancery Division, Family Part, Bergen County.
Decided June 1, 1992.
*691 R. Gregory Leonard, for plaintiff-respondent (Leonard & Butler, attorneys).
Charles R. DeFuccio, for defendant-movant (Rose & DeFuccio, attorneys).
MOSES, J.S.C.
Taylor Ryan asks the court to declare the pre-retirement benefits package he received from his employer, after the divorce complaint was filed, not subject to equitable distribution.
The parties were married on May 9, 1970. Mr. Ryan had been employed by IBM since 1965 and both parties were employed by IBM at the time of the marriage. In 1973, Mrs. Ryan stopped working to raise their child.
She filed a complaint for divorce on July 11, 1989. The parties appeared in court on February 25, 1992 for trial. Mr. Ryan says that is when he learned, for the first time, that Mrs. Ryan was seeking equitable distribution of three types of payments he had received from IBM on December 31, 1991, pursuant to a pre-retirement program. He asserts that because these payments were received over two and one half years after the complaint was filed, the money is not subject to equitable distribution. The three types of payments are severance pay, vacation pay and commissions.

*692 I. SEVERANCE PAY
IBM's pre-retirement program provides for a severance payment equal to one weeks pay for each six months of service with the company up to a maximum of fifty-two weeks. The program offers an attractive financial inducement to leave the company and was designed by IBM to reduce its overall work force. The payments were to assist employees, who chose to participate in the program, in making the transition into a new career or retirement.
Mr. Ryan was eligible for the pre-retirement program because his skills were in an excess category. For five years from the date of the leave, he will continue to accrue service and earnings credits towards future retirement benefits. Mr. Ryan received a severance payment of $62,238.41, net, based on his regular salary and years of service as of the day he left active employment.
Mrs. Ryan contends that the husband's pre-retirement severance pay is turning an asset, 20 years of service with IBM, into money, which should be subject to equitable distribution. She asserts that, whatever the label, "retirement program", "pre-retirement program" or "leave of absence payment", the sum represents an employment benefit and should be distributed. She contends that the "Pre-Retirement Program" is, in reality, a retirement program because it requires an irrevocable commitment to retire at the end of the leave of absence (PRP Question 83) and is subject to the Employee Retirement Income Security Act (ERISA). She points out that the program is voluntary (PRP Questions 8 and 87), while severance pay, is not. In addition, she notes that Mr. Ryan received a greater than the normal separation allowance, by his participation in the program, because of his many years of service. (PRP Question 42).
Mr. Ryan argues that his particular program is distinguishable from both retirement and pension plans. It is not a retirement plan because it occurred prior to retirement and does *693 not affect his future right to retirement compensation. It is distinguishable from a pension plan because a pension is a form of deferred compensation. This severance pay is not deferred compensation, but is payment for waiving his right to receive future salary and employment from IBM. He argues that the fact that he would have to repay the severance in the event that he is rehired by IBM negates its inclusion in equitable distribution. He claims that if the payment was made to compensate past services, it would not have to be repaid.
There is no case law in New Jersey specifically dealing with the question of inclusion of post-complaint severance pay in equitable distribution.
Prior analyses of severance pay as the subject of equitable distribution have discussed two bedrock theories of marital property law: (1) that assets acquired by gainful labor during marriage are marital property and (2) that earnings after dissolution are the earner's separate property. See Grace Ganz Blumberg, Marital Property Treatment of Pensions, Disability Pay, Workers' Compensation, and other Wage Substitutes: An Insurance, or Replacement, Analysis, 33 U.C.L.A.L.Rev. 1250 (1986).
The classification of severance pay in a marital property situation has been addressed in other jurisdictions. The crucial issue in those cases has been the determination of the nature of the severance pay; i.e. whether it replaced post-marital earnings, thus warranting a "separate property" characterization, or whether it had some other purpose relating to compensation for labor during the marriage, thus qualifying as marital property.
Cases in equitable distribution jurisdictions are not consistent. In Biddlecom v. Biddlecom, 113 A.D.2d 66, 495 N.Y.S.2d 301 (N.Y. App. Div. 1985), the New York Appellate Division held that severance pay was the employee's separate property because the right to receive such pay did not exist during the marriage. However, the court did not consider the argument *694 that the severance pay was derived from the employee's many years of labor during the marriage. Conversely, in Hutchins v. Hutchins, 71 Mich. App. 361, 248 N.W.2d 272 (1976), the Michigan Court of Appeals, although primarily addressing whether the husband's pension and retirement benefits were subject to equitable distribution, suggested, in dictum, that severance pay received during the marriage "might be" marital property. The decision did not make it clear whether the severance pay was intended to replace marital or post-marital wages.
Cases dealing with severance pay in community property jurisdictions have dealt with the question more directly. In In re Marriage of Wright, 140 Cal. App.3d 342, 189 Cal. Rptr. 336 (1983), the California Court of Appeals held that severance pay received by the husband after the parties separated was the husband's separate property. The employer testified that the payment was made in recognition of the fact that the husband would encounter difficulty in securing future employment. The court analogized the pay to disability pay, which is separate property to the extent that it replaces future earnings that otherwise would be the worker's separate property. Ibid.; See also, In re Marriage of Flockhart, 119 Cal. App.3d 240, 173 Cal. Rptr. 818 (1981).
In Lawson v. Lawson, 208 Cal. App.3d 446, 256 Cal. Rptr. 283 (1989), the court stated that the ex-husband's post-dissolution employment separation allowance was separate property, even though the payment was based on the husband's years of service. The allowance was intended as future replacement compensation for employees pursuing new jobs following a work force reduction. Id. 256 Cal. Rptr. at 288.
In In Marriage of Roark, 34 Wash. App. 252, 659 P.2d 1133 (1983), the court ruled that the husband's severance pay, received after he was discharged due to company reorganization, was community property. The court found that the husband did not prove that the severance pay prevented him from accepting new employment and the court inferred that the *695 award was not intended to replace lost post-marital wages. Ibid.
In New Jersey, courts are authorized to grant "an award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage." N.J.S.A. 2A:34-23. The purpose of this legislation is to allocate marital assets between the spouses, regardless of ownership. Painter v. Painter, 65 N.J. 196, 213, 320 A.2d 484 (1974). In order to find that the funds are subject to equitable distribution, this court must find the severance payments received by the husband represent property which was "legally and beneficially acquired" by the parties during the marriage. Kikkert v. Kikkert, 177 N.J. Super. 471, 427 A.2d 76 (App.Div. 1981), aff'd o.b. 88 N.J. 4, 438 A.2d 317 (1981).
While New Jersey courts have not specifically dealt with severance pay, various cases discuss distribution of retirement and pension benefits. In New Jersey, pensions are regularly subject to equitable distribution as a form of deferred compensation. Scherzer v. Scherzer, 136 N.J. Super. 397, 346 A.2d 434 (App.Div. 1975), certif. denied, 69 N.J. 391, 354 A.2d 319. A pension plan "is the result of direct or indirect efforts expended by one or both parties to the marriage ... It is additional compensation for services rendered for the employer and a right acquired during the marriage." Kikkert v. Kikkert, 177 N.J. Super. at 476, 427 A.2d 76.
In Whitfield v. Whitfield, 222 N.J. Super. 36, 45, 535 A.2d 986 (App.Div. 1987), in dealing with the issue of whether a pension must be vested prior to the dissolution of a marriage in order for it to be subject to equitable distribution, the Appellate Division affirmed its analysis in Kikkert, supra, 177 N.J. Super. 471, 427 A.2d 76, and directed that the critical task is to properly interpret the phrase "legally and beneficially acquired." Id. 222 N.J. Super. at 43, 535 A.2d 986. All property, *696 regardless of its source, in which a spouse acquires an interest during the marriage shall be eligible for distribution in the event of divorce. Ibid. The touchstone of this inquiry is whether that interest constitutes property acquired during the marriage. Id. at 45, 535 A.2d 986. The includability of property in the marital estate does not depend on when, during the marriage, the acquisition took place, and should not be excluded from the distributable estate solely because of the fortuitous timing of the failure of the marriage. Id. at 64, 535 A.2d 986.
The crucial issue here is the determination of the nature of the severance pay. If the payment was intended to replace post-marital earnings, it would warrant a separate property characterization. If, however, it has some other purpose relating to compensation for work performed during the marriage, it would qualify as marital property for the purpose of equitable distribution, regardless of the timing of the divorce complaint.
The IBM program in question was designed to assist employees making the transition into a new career, but does not specifically state that it was intended to replace lost wages. IBM did not express an explicit concern that it would be difficult for the employees in the program to find new employment, as did the employer in Wright, supra, 184 Cal. Rptr. at 336. Further, while the husband's employment search has been restricted in that he cannot work for or compete with I.B.M., he has not been prevented from accepting new employment. See Roark, supra, 34 Wash. App. 252, 659 P.2d 1133. It is undisputed that the amount of the payment was based on the Mr. Ryan's weekly pay and years of service. Indeed, he was eligible for the program because his skills were considered to be in an excess category.
The parties were married for twenty of the twenty-six years the husband worked for IBM. Mrs. Ryan left her employment in 1973 in order to raise their child. The marriage was a shared enterprise, with each party benefitting from participation. It was this joint effort which contributed to the husband's successful *697 career, which then led to his entry into the pre-retirement program and his receipt of severance pay.
This court concludes that the severance payment was compensation for past labor, not a replacement for future earnings, because the amount was based on the Mr. Ryan's past services to IBM. Thus, Mr. Ryan's right to receive severance pay was, indeed, "legally and beneficially acquired" during the marriage. As such, the payment must be considered a marital asset for the purpose of equitable distribution.
While the court has decided that the pre-retirement payment is subject to equitable distribution, the court is making no determination as to what percentage of said payment the wife should receive. The trial court will have to determine the parties' respective shares of this payment at the time of the divorce trial. (The entire case settled and the divorce was put through on August 31, 1992. The parties are still in dispute as to the form of the order.)

(2) VACATION PAY
The husband received $20,628.30 at separation as payment for his unused, accrued vacation days. He claims that this is also not subject to equitable distribution.
Two out-of-state cases deal with the issue of accrued vacation pay. In Brotman v. Brotman, 528 So.2d 550 (Fla. Dist. Ct. App. 1988), the court held that severance pay and "earned vacation" pay, received after the parties separated but before dissolution, is marital property because the two items were assets acquired during the marriage. On the other hand, in Thomasian v. Thomasian, 79 Md. App. 188, 556 A.2d 675 (1989), the Maryland Appeals court held that a spouse's accrued holiday and vacation leave is not divisible marital property.
There is no New Jersey case law on the issue of vacation pay. The cases cited demonstrate that there is no generally applicable law on the issue.
*698 It is undisputed that a large percentage of the vacation days for which the husband was paid were days that were accrued during the marriage. As such, this judge concludes they are the result of the marital enterprise and are to be considered marital assets, subject to equitable distribution. The exact number of days will be determined at trial.

(3) COMMISSIONS
The husband received a payment of $20,000 upon leaving IBM as commissions paid above his assigned earnings. The case of In re Marriage of Skaden, 19 Cal.3d 679, 139 Cal. Rptr. 615, 566 P.2d 249 (1977), is instructive here. The California Supreme Court concluded that termination benefits, consisting of a percentage of premiums collected on policies placed by a former insurance agent, were community property because they were deferred compensation for the agent's previous endeavors.
This court concludes that the husband's commission payment is deferred compensation for his previous endeavors, which took place during and as a result of the marriage. As such, it is also subject to equitable distribution.

CONCLUSION
In sum, all three types of payments received by Mr. Ryan in 1991, after the complaint was filed, but before dissolution, are subject to equitable distribution because they represent different forms of deferred compensation for his twenty-six years of service to the company. The amount of the severance payment was based on the husband's salary level at the time of his departure and on his skill level. The commissions and vacation payments are also due, directly and as a result of, the husband's work at IBM. Twenty of these 26 years were served during the marriage, during which time the wife contributed to his success in his career. The payments are, therefore, a marital asset.
*699 The percentage of each of the three types of payments to allocate to the wife will be determined at trial.