996 A.2d 416

Frederick T. SMITH

v.

Sandra T. SMITH.

No. 0134, Sept. Term, 2009.

Court of Special Appeals of Maryland.

May 28, 2010.

30

Charles S. Darby of Clarksburg, MD, for appellant.

Michael F. Callahan (Thyden Gross & Callahan, LLP, on the brief), Chevy Chase, MD, for appellee.

Panel: MEREDITH, MATRICCIANI and JAMES P. SALMON, (Retired, Specially Assigned) JJ.

JAMES P. SALMON, J. (Retired, Specially Assigned).

Frederick Troy Smith ("Frederick") and Sandra Smith ("Sandra") were married on September 15, 1966. Forty-one years later, on October 15, 2007, Sandra filed a complaint for

divorce against Frederick in the Circuit Court for Prince George's County. Frederick responded by filing a cross-complaint for divorce against his spouse.

At trial, the major issues about which the parties could not agree were financial. On July 17, 2008, the trial judge ruled from the bench and, insofar as here pertinent, divided the marital property evenly between the litigants.

Before the order granting a judgment of absolute divorce was signed, Sandra filed a motion to open the record to receive new evidence concerning post-retirement monies ($33,-088.61) that had recently been received by Frederick from his former employer. Frederick, who had retired from his job with the Montgomery County Public School system on June 24, 2008, received the money to pay him for unused accrued leave. Sandra claimed that these monies were marital property and that she was entitled to receive a monetary award equal to one-half of the net proceeds. The trial judge granted the motion to open the record, but ultimately declined to treat as marital property the monies recently received by Frederick. A final judgment of absolute divorce was entered on February 6, 2009.

Frederick filed a motion to amend judgment on February 12, 2009. The motion concerned a 5.35 acre parcel of land located in St. Mary's County that was titled in the name of Frederick and Sandra, as tenants by the entirety. Frederick contended in his post-trial motion that the trial court erred when it failed to grant him a monetary award equal to the full value of the St. Mary's County land because, despite the way the land was titled, the transferor of the property (Frederick's mother) intended the transfer to be a gift to Frederick alone. In the alternative, Frederick asked the court to transfer the St. Mary's County property to him. That motion was denied. Frederick noted an appeal and Sandra filed a timely cross-appeal.

As phrased by Frederick, the issue to be resolved is:

[W]hether the trial court considered the contribution of either party to marital property which resulted in an error

by equally dividing the interest in the St. Mary's Property between Mr. and Mrs. Smith when such property had been given to Mr. Smith by his mother and Mr. Smith merely titled the property as tenants by the entirety.

In her cross-appeal, Sandra asks: "Whether the trial court erred in ruling that money due the Husband from his employer upon retirement for accrued leave was not marital property."

## I.

### Facts Relevant to Issue Raised by Frederick

Frederick's mother, Alice Smith ("Alice"), owned a 5.35 acre parcel of property in St. Mary's County. Alice deeded a fifty percent interest in that property to Sandra and Frederick, as tenants by the entireties, on February 5, 1996. The deed was duly recorded in the St. Mary's County land records on February 6, 1996. Less than one year later, on January 28, 1997, Alice signed a second deed conveying the remaining fifty percent interest in the property to Frederick and Sandra as tenants by the entireties. That deed was also duly recorded. Alice died on February 11, 1999.[1]

In regard to the St. Mary's County property, Sandra testified on direct examination that she and Frederick own the property. She then testified, ambiguously, that although she

---

1. On January 13, 1998, Alice executed a will that purported to convey the St. Mary's County property to Frederick alone. She said in her will:

> I give and devise unto F. Troy Smith, my son, all interest in a tract of land in St. Mary's County, Maryland containing 5.35 acres. I have conveyed certain percentages to him this year and will continue to convey further percentages in later years until a 100% [interest] has been conveyed to him.

The will made no mention of the fact that the testator had already conveyed her entire interest in the St. Mary's County property to Sandra and Frederick as tenants by the entirety. The will was introduced into evidence by Frederick, but since the property at issue had already been conveyed, neither the existence of the will nor its contents were relevant to the issue Frederick raised at trial.

"wasn't there at the meeting" she knew that Frederick's mother intended to "g[i]ve [Frederick] that property."

Frederick testified that he, his mother (Alice), and Alice's attorney, David Gwynn, Esquire, met at Mr. Gwynn's Upper Marlboro, Maryland office to discuss the transfer of the St. Mary's County property. These discussions occurred before his mother signed both the 1996 and 1997 deeds. According to Frederick, Alice wanted to transfer the property to him alone but he suggested, and his mother acquiesced in the suggestion, that Sandra's name be put on the deed so that if he (Frederick) died first, Sandra could avoid probate.[2]

## II.

### Analysis of the Issue Raised by Frederick

■ Frederick recognizes that, pursuant to Md. Ann. (2006 Repl. Vol.), § 8–201(e) of the Family Law Article ("FL"), the St. Mary's County property was correctly found by the trial judge to be marital property. FL section 8–201(e) reads:

### § 8–201.  Definitions.

\*      \*      \*

(e) *Marital property.*—(1) "Marital property" means the property, however titled, acquired by 1 or both parties during the marriage.

---

2.  Frederick's exact testimony on this subject was as follows:

[Frederick's Counsel]: Just tell the Court briefly why you had the land titled [as tenants by the entirety] at the time.

[Frederick]: When they were signing the property over, they asked— my mom was putting it to me and I said in case something were to happen to me, I'd want this, you know, I wouldn't want for you to either have to go through all the red tape and probate and so forth so I had them just go ahead and put both names on it, but she was giving it to me. They questioned me if I wanted to do that because they had questions about it—

Q.  Okay. Okay. That's good.  That's good.  Did you intend to give that property to your wife in the event of divorce?

A.  No.

*(2) "Marital property" includes any interest in real property held by the parties as tenants by the entirety unless the real property is excluded by valid agreement.*

(3) Except as provided in paragraph (2) of this subsection, "marital property" does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources.

(Emphasis added.)

The main "error" that Frederick claims that the trial judge committed was that the judge, when he concluded that the St. Mary's County property should be divided equally, failed to "address" factor nine, which is one of the eleven factors set forth in FL section 8–205(b)[3] that must be considered when deciding whether to make a monetary award. Section 8–205(b) reads, in pertinent part:

---

3. The other factors listed in FL section 8–205(b) are:
> (1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;
> (2) the value of all property interests of each party;
> (3) the economic circumstances of each party at the time the award is to be made;
> (4) the circumstances that contributed to the estrangement of the parties;
> (5) the duration of the marriage;
> (6) the age of each party;
> (7) the physical and mental condition of each party;
> (8) how and when specific marital property or interest in property described in subsection (a)(2) of this section was acquired, including the effort expended by each party in accumulating marital property or the interest in property described in subsection (a)(2) of this section, or both;
>
> \*     \*     \*
>
> (10) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and
> (11) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in property described in subsection (a)(2) of this section, or both.

(b) Factors in determining amount and method of payment or terms of transfer.—The court shall determine the amount and the method of payment of a monetary award, or the terms of the transfer of the interest in property described in subsection (a)(2) of this section, or both, after considering each of the following factors:

\*    \*    \*

(9) *the contribution by either party of property* described in § 8–201(e)(3) of this subtitle *to the acquisition* of real property held by the parties as tenants by the entirety;

(Emphasis added.)

It should first be noted that the St. Mary's County property did meet the definition of "property described in section 8–201(e)(3)" because it was property "acquired by . . . gift from a third party."

Frederick argues:

The Marital Property Act as amended makes it clear that the source of funds does not apply to an interest in real property by the parties as tenants by the entirety. I[n] effect, the Act creates a legal fiction wherein regardless of the source, property titled as tenants by the entirety is considered marital property. However, to the extent the property is classified as marital, then the Court, in the interest of equity, *must consider as a factor in the equitable distribution of marital property a party's contribution of non-marital funds to real property titled as tenants by the entirety. Flanagan v. Flanagan,* 181 Md.App. 492 [956 A.2d 829] (2008). See also John F. Fader II and Richard J. Gilbert, MARYLAND FAMILY LAW Section 15–9(a), at 15–39 to 44 (4th edition 2006, 2007 Supp.) and *Gordon v. Gordon,* 74 [174] Md.App. 583, 923 A.2d 149 (2007) also citing Fader.

(Emphasis in original.)

We have no quarrel with the legal principles relied upon by Frederick. But, under the circumstances, those principles do not advance Frederick's position. As far as is shown in the

record, neither Frederick nor Sandra contributed one penny of non-marital funds to the acquisition of the St. Mary's County property. The trial judge appropriately considered factor nine, because he found (correctly) that Alice, by deeding the property to the parties as tenants by the entirety, made a gift of that land to both Frederick and his spouse. Because the gift was to both parties the ninth factor, insofar as the St. Mary's County property is concerned, was neutral.

Frederick makes a second argument that is closely related to his first, viz:

> The court in rendering its judgment stated that the St. Mary's tract of land was a gift from the mother to both Mr. and Mrs. Smith. As such it was marital property and he ordered that it be sold and divided equally. However, the testimony is undisputed that the St. Mary's tract of land was a gift from the mother to appellant. As set forth in the statement of facts, even the appellee admitted that she knew that the St. Mary's property was a gift from her mother to her son. She confirmed this both on cross examination and re-cross examination.

> Moreover, no testimony was adduced at trial to show what contribution the appellee made to St. Mary's property other than having title by virtue of the appellant's desire to protect her in the event of his death. The reason for this lack of evidence is simple, she made no contribution whatsoever.

The evidence, contrary to Frederick's argument, did not show that Alice made a gift of the land only to Frederick. Although Alice initially intended to make a gift of the land to Frederick, she changed her mind. She did so at Frederick's suggestion and for no consideration. After changing her mind, Alice made a gift of the land to Frederick and Sandra by transferring it to them as tenants by the entirety. Titling property in that fashion, of course, had legal consequences more far reaching than simply allowing the surviving tenant to avoid probate.

It is true, as Frederick stresses, that the evidence is clear that Sandra made no contribution whatsoever to the acquisition of the land. But, contrary to the implication contained in that argument, that fact was neutral because Frederick likewise made no contribution of funds to the acquisition of the land either. He, like Sandra, simply received a gift.

## III.

### Issue Raised by Sandra on her Cross–Appeal

■ Frederick worked for the Montgomery County Public Schools system as an energy management technician from 1981 until he retired on June 24, 2008. His retirement date was approximately three weeks prior to the date when the trial in this matter commenced. After Sandra's post-trial motion to "open the record" was granted, she proved that on July 31, 2008, after the trial had concluded, Frederick was paid $33,088.61 by his former employer to reimburse him for accrued annual leave and sick leave. After taxes, he received $19,406.46. Sandra argues that because Frederick retired before their divorce was granted, the payment represented the repayment of a debt owed to Frederick by his employer for services rendered during the marriage and thus met the definition of marital property. According to Sandra, the trial court erred when it ruled that the $33,088.61 was non-marital property. She asserts that the trial court should have given her a monetary award equal to fifty-percent (50%) of $19,406.46 or $9,703.23.

Frederick, relying on *Thomasian v. Thomasian,* 79 Md. App. 188, 556 A.2d 675 (1989), maintains that the trial judge correctly ruled that the value of accrued annual and sick leave should be categorized as non-marital property, even though, prior to the divorce, he received monies from his employer paying him for the value of that accrued leave.

In *Thomasian,* the husband was, at the time a judgment of divorce was granted, a senior health officer at Providence Hospital in Washington, D.C. *Id.* at 191, 556 A.2d 675. At the time of the divorce hearing, he had accrued more than 180

hours of vacation time and more than 180 hours of unused holiday time. *Id.* at 196, 556 A.2d 675. The accrued leave had a total value of more than $12,000. *Id.* Ms. Thomasian unsuccessfully attempted to convince the trial judge that the value of the accrued leave met the definition of marital property and therefore should be categorized as such when determining whether to make a monetary award. *Id.* at 196–97, 556 A.2d 675. In *Thomasian,* Judge Robert Bell said for this Court:

This precise issue was presented to the Supreme Court of Alaska in *Schober v. Schober,* 692 P.2d 267 (Alaska 1984). There, Mr. Schober, an Alaska state trooper had over 400 hours of accrued, but unused personal leave. Under the terms of his contract with the State, he could use the leave as paid vacation or convert it to cash. Mrs. Schober unsuccessfully sought to have the trial judge consider the unused leave as a marital asset. In denying that request, the trial court was of the opinion that the leave was contingent and, therefore, not a present asset.

The appellate court reversed. It pointed out that Mr. Schober's interest in his unused leave was, rather than an expectancy, a chose in action, a form of property, because his right to paid vacation constituted deferred wages for services rendered and, consequently, vested as the labor was rendered. As a result, the court determined that Mr. Schober's interest was like a pension or retirement benefit, a form of deferred compensation. The court concluded, therefore, that the unused leave was a marital asset and should have been considered by the trial court in determining how to divide the Schobers' property.

Even though it is closely akin to that used by the Court of Appeals and this Court in *Deering* [*v. Deering,* 292 Md. 115, 437 A.2d 883 (1981) ], *Ohm* [*v. Ohm,* 49 Md.App. 392, 431 A.2d 1371 (1981) ], and *Green* [*v. Green,* 64 Md.App. 122, 494 A.2d 721 (1985) ], we are not persuaded by the rationale of the Alaska Court. Nor are we satisfied that simply because the definition of property in our Act is expansive enough to encompass accrued holiday and vacation entitlement, it nec-

essarily does. We just are not persuaded that accrued holiday and vacation entitlement is the same as a pension or retirement benefits, a form of deferred compensation; since it replaces wages on days when the worker does not work, it is really only an alternative form of wages. *MEA/AFSCME Local 519 v. City of Sioux Falls*, 423 N.W.2d 164, 166–67 (S.D.1988). *It need not be liquidated by the payment of cash; it may be, and often is, dissipated when the person entitled to do so, takes vacation or holiday time. Thus, it is far from as tangible as, and much more difficult to value, not to mention more personal than, a pension or retirement benefits. Accordingly, we hold that accrued holiday and vacation entitlement is not marital property.* It follows that the court did not err in refusing to consider it in determining whether to grant a monetary award.

*Id.* at 199–200, 556 A.2d 675 (emphasis added).

Sandra argues:

*Thomasian* is not on point. Unlike Dr. Thomasian, Husband retired prior to trial. And unlike the Wife in *Thomasian*, Wife does not seek a monetary award based on Husband's entitlement to leave. Wife seeks an award based on the amount of money that was unequivocally due to Husband [Frederick] on the date of trial and was in fact paid to Husband on July 31, 2008.

Since Husband had retired there was no possibility that this asset would be "dissipated" by his using it as paid time off in the future. Simply put, the asset in question is not the entitlement to accrued leave and holiday pay that was at issue in *Thomasian*, it is money paid to Husband by his employer for services rendered to his employer during the marriage.

Sandra's argument has merit. Marital property is defined as "the property, however titled, acquired by 1 or both parties during the marriage." FL, § 8–201(e)(1). Here, the money at issue came into Frederick's hands, as a job benefit, prior to the date the parties divorced. The core reason for our holding in the *Thomasian* case was that the asset there at issue "was

far from tangible" due to the fact that Mr. Thomasian was still working and had not received the money. *Id.* at 200, 556 A.2d 675. The key concern in *Thomasian* was that benefits of that type could be and often were dissipated when the person entitled to the benefits took holiday, vacation, or sick time. *Id.* at 199–200, 556 A.2d 675. In the instant case, there is no such concern because, prior to the judgment of divorce, the accrued leave was converted into a tangible asset, namely a cash payment made to Frederick.

The same issue raised by Sandra in her cross-appeal also arose in *Brotman v. Brotman,* 528 So.2d 550 (Fla.Dist.Ct.App. 1988). In *Brotman,* after the parties separated but before dissolution of their marriage, Mr. Brotman was fired from his job. *Id.* at 551. He received severance pay and "earned vacation" pay upon termination. *Id.* Under Florida law, when asked to enter a judgment of divorce, courts are required to make an "equitable distribution" to the parties in order "to achieve a fair division of marital assets, which are those assets acquired by the parties during their marriage from their work efforts, services, and earnings." *Id.* (Citations omitted). The *Brotman* Court held that the severance pay and "earned vacation" pay were assets acquired during the marriage and therefore should have been considered when distributing the property to achieve an equitable distribution. *Id.* at 552.

In *Ryan v. Ryan,* 261 N.J.Super. 689, 619 A.2d 692 (Ch.Div. 1992), the husband, an employee of IBM, received $20,628.30 for accrued vacation days. *Id.* at 695. The monies were received after the filing of the complaint for divorce but before the divorce was granted. *Id.* Most, but not all, of the vacation days were accrued during the marriage. *Id.* at 692. The New Jersey Court, at the outset, explained, *id.* at 694:

> In New Jersey, courts are authorized to grant "an award or awards to the parties, in addition to alimony and mainte-nance, to effectuate an equitable distribution of the proper-ty, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage." N.J.S.A. 2A:34–23. The purpose of this legislation is to allocate marital assets between the spouses, regardless of

ownership. *Painter v. Painter,* 65 N.J. 196, 213, 320 A.2d 484 (1974).

*Id.*

In a case of first impression in New Jersey, the *Ryan* Court concluded that the earned vacation pay received before the marriage was dissolved was "the result of the martial enterprise and [is] to be considered [a] marital asset[ ], subject to equitable distribution." *Id.* at 696. Because some of the vacation days were accrued prior to the date the parties married, the *Ryan* Court remanded the case to the trial court to calculate the exact amount of vacation days accrued post marriage. *Id.*

Very recently, the Supreme Court of Illinois thoroughly reviewed cases from many jurisdictions that had addressed the issue of whether accrued leave should be considered marital property. *See In re Marriage of Abrell,* 236 Ill.2d 249, 337 Ill.Dec. 940, 923 N.E.2d 791 (2010). The *Abrell* Court observed that jurisdictions are split concerning the issue of whether accrued vacation and sick days are marital property and that courts in sister states have held:

(1) accrued vacation and sick days are marital property subject to division at the time of dissolution; (2) accrued vacation and sick days are marital property but are subject to distribution when received, not at the time of dissolution; and (3) accrued vacation and sick days are not marital property.

*Id.* at 257, 337 Ill.Dec. 940, 923 N.E.2d 791.

The cases in which the accrued vacation and sick days were held to be non-marital were ones with fact patterns similar to those set forth in *Thomasian.* *See Abrell,* 236 Ill.2d at 261–65, 337 Ill.Dec. 940, 923 N.E.2d 791; *Akers v. Akers,* 729 N.E.2d 1029, 1031 (Ind.Ct.App.2000); and *Bratcher v. Bratcher,* 26 S.W.3d 797 (Ky.Ct.App.2000).

The *Abrell* Court was called upon to construe and apply a statute that defined marital property as "all property acquired by either spouse subsequent to the marriage" with certain exceptions not here relevant. *Id.* at 257, 337 Ill.Dec. 940, 923

N.E.2d 791. See also section 503(a) of the Illinois Marriage and Dissolution Act, 750 ILCS 5/503 (a) (West 2004). John Abrell had accrued 115 sick days and 42 vacation days as of the date of the divorce. *Id.* at 265–66, 337 Ill.Dec. 940, 923 N.E.2d 791. Unlike the situation in the case at hand, however, post divorce John Abrell still worked for the same employer. *Id.* His wife, Jacquie, contended, and the trial court agreed, that the value of the accrued sick and vacation days was marital property. *Id.,* at 253–54, 265–66, 337 Ill.Dec. 940, 923 N.E.2d 791. The Illinois Supreme Court disagreed, saying:

> ... John had no present right to be paid for his sick and vacation days absent retirement or termination of his employment. Further, while John had accrued 115 sick days and 42 vacation days at the time of trial, those days may or may not remain at the time John retires or terminates his employment. If John uses any of the sick or vacation days awarded to him prior to retirement or termination of his employment, John will never collect payment for those days. In that case, the award of the value of those days to John in the property distribution would be illusory. As John has argued, if this court reinstates the trial court's finding that the accumulated vacation and sick days are marital property, John's share of the marital estate will be diminished every time he uses a sick day or vacation day before his retirement or termination, while Jacquie's cash payout will remain the same. Consequently, we find that although John accumulated his vacation and sick days during his marriage to Jacquie, the accumulation of those days had only a future value that was indeterminate and speculative. For that reason, we find that the accrued vacation and sick days differ from pension plans, stock options and deferred compensation.

At oral argument, Jacquie analogized the facts of this case to a situation where a party is self-employed, and during the marriage puts money into an account to provide funds for any work days missed due to sickness or vacation. Jacquie argues that under her scenario, upon dissolution,

the money put aside for vacation and sick days would qualify as marital property. Jacquie states that there should be no difference between money put aside by a self-employed party in anticipation of a vacation or sickness, and the value of vacation and sick days accrued by an employee pursuant to his employment.

We disagree with Jacquie that there is no difference between money put aside by a party in anticipation of a vacation or sickness and accrued vacation and sick days. Under Jacquie's scenario, a party is simply taking money that is marital property and putting it into a specific account. The fact that the parties designate that account as providing funds for vacations or sick days does not prevent the parties from using that money for other things. That money is tangible and certain, and would be subject to division at dissolution without regard to the parties' characterization of the account holding the funds.

In contrast, the value of accrued vacation and sick days is speculative and uncertain until a party actually collects compensation for those days at retirement or termination of his employment. A party cannot receive cash for those days prior to retirement or termination. In fact, it is possible that in some cases, an employer might change its policy concerning the right to receive compensation for accrued sick days, limiting or eliminating that right entirely. Similarly, in cases where provided for in a collective-bargaining agreement, an employer might change its policy concerning the right to receive compensation for accrued vacation days. *See* 820 ILCS 115/5 (West 2008). Accordingly, we find that accrued vacation and sick days are not marital property subject to distribution in a dissolution of marriage action.

In so holding, we note that the facts of this case differ from the facts in *Brotman v. Brotman,* 528 So.2d 550 (Fla.[App.]1988), and *Ryan v. Ryan,* 261 N.J.Super. 689, 619 A.2d 692 (1992). In those cases, the husbands received payment for accrued vacation days following separation but prior to dissolution of marriage. *We agree that when a*

*party has actually received payment for vacation and/or sick days accrued during marriage prior to a judgment for dissolution, the payment for those days is marital property subject to distribution in the marital estate. Under that scenario, the vacation and/or sick days have been converted to cash, the value of which is definite and certain. In this case, however, the accrued days have not been converted to cash, and the value of those days remains uncertain.*

*Id.* at 265–67, 337 Ill.Dec. 940, 923 N.E.2d 791 (emphasis added).

Our research has uncovered no case, and the parties have referred us to none, where a court has held that the value of leave accrued during the marriage was non-marital when a spouse has already received a payment for that leave prior to the dissolution of the marriage. In this regard it is interesting to note that in the *Akers* case the court noted that the result might be different if the accrued leave was a vested interest at the time of the dissolution of marriage. *Akers,* 729 N.E.2d at 1033 n. 5.

■ We agree with the reasoning set forth in the emphasized portion of the excerpt from *Abrell* just quoted. We therefore hold that when a party has, prior to the dissolution of the marriage, actually received payment for vacation, annual, or sick leave accrued during marriage, the monies paid should be considered marital property, subject to distribution pursuant to FL section 8–205. On the other hand, in cases like *Thomasian,* if as of the time of divorce no monies have been received by a spouse for unused vacation, sick, or annual leave, the value of such days is not to be considered as marital property.

We shall remand this case to the Circuit Court for Prince George's County for further proceedings consistent with the views expressed in this opinion.

**THE PORTION OF JUDGMENT THAT REJECTED SANDRA SMITH'S DEMAND THAT MONIES RE-CEIVED BY FREDERICK SMITH TO COMPENSATE HIM FOR UNUSED ANNUAL AND SICK LEAVE BE**

CATEGORIZED AS MARITAL PROPERTY RE-
VERSED; CASE REMANDED TO THE CIRCUIT
COURT FOR PRINCE GEORGE'S COUNTY FOR FUR-
THER PROCEEDINGS CONSISTENT WITH THE VIEW
EXPRESSED IN THIS OPINION; JUDGMENT OTHER-
WISE AFFIRMED; COSTS TO BE PAID BY FREDER-
ICK SMITH.