Filed 9/9/15  Pinder v. Pinder CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT F. PINDER III,<br><br>        Petitioner and Respondent,<br><br>V.<br><br>BARBARA A. PINDER,<br><br>        Respondent and Appellant. | A143028<br><br>(Marin County<br>Super. Ct. No. FL001885) |

Appellant Barbara A. Pinder, appearing in propria persona, appeals from a trial court order dividing a marital asset and imposing upon her an attorney-fee sanction in the amount of $15,000 under Family Code section 271.[1]  We affirm.

BACKGROUND

Barbara's former husband, respondent Robert F. Pinder III, filed a petition for dissolution of marriage in April 2000.  Two years later, the trial court entered judgment dissolving the marriage but reserved issues of property distribution.  The trial court later set December 31, 1999, as the date of the parties' separation for purposes of dividing assets, and it divided all marital assets, except one.  The one exception was a membership interest in the San Francisco Bar Pilots Benevolent and Protective Association (the Bar Pilots' Association).  The court reserved jurisdiction over this asset, ruling that "the

_____

[1] Further undesignated statutory references are to the Family Code.

 For clarity and ease of reference, we shall refer to the parties by first name with no disrespect intended.

1

community interest in which shall be divided equally upon liquidation.  If, by the time of liquidation, Wife can successfully trace a separate property contribution, she shall be reimbursed such sum prior to the distribution of the community interest."

In October 2013, Barbara requested a division of the membership interest, claiming it had a value of $405,266.  She stated she was entitled to $25,000 as a separate-property contribution to the asset and one-half the remainder, or $190,133.  The matter was set for a hearing on May 21, 2014.

In a pretrial brief, Robert claimed he paid $150,000 in March 1997 to join the Bar Pilots' Association (the buy-in) and was issued a membership certificate the following month.  He stated that the buy-in was financed with funds borrowed from Barbara's mother, and those funds were repaid from the parties' joint bank account.  By December 31, 1999—the date the trial court established as the date of the parties' separation—the value of the membership had increased to either $157,000 or $196,250.  In October 2013, Robert separated from the Bar Pilots' Association on a disability/retirement basis, which triggered a buy-out of the membership.  Two months later, he received $416,603 for the membership and placed the funds in a trust account for division by the court.

At the May 21 hearing, the court received evidence on whether the funds from the buy-out were community or separate property, or a combination of both.  Several facts were undisputed:  The membership was purchased on April 1, 1997, for $150,000; the membership was paid for with a check or cashier's check drawn from the parties' joint bank account; the parties borrowed $150,000 on April 1, 1997, from Barbara's mother and deposited the money in their joint bank account; the parties later repaid Barbara's mother from their joint account; the value of the membership at the date of separation was $157,000; the amount of the buy-out was $416,603; and Barbara lacked documentary evidence to support her separate-property claim.

Barbara appeared without representation at the May 21 hearing and did not testify under oath.  During exchanges with the court, however, she asserted that she used $25,000 from an inheritance from her father, which was her separate property, to help

2

fund the membership buy-in. At one point, the court remarked that Barbara had "a bit of a misunderstanding as to how separate property and community property and tracing works," and asked her if she had "any evidence that you used your separate property to purchase this particular asset?" The court explained to Barbara that merely asserting she used separate property from her inheritance to pay family expenses is "not really a tracing under the law. If you use your separate property to pay household expenses, you're contributing to the community. . . . [¶] . . . [¶] . . . 'Tracing' means you show me what money went in and then you follow that particular money to show that it is from your separate property. . . . Do you have that?" Barbara acknowledged she had no such evidence of tracing, only a "verbal agreement that [Robert] promised" to repay her $25,000. The court reminded Barbara the only issue over which the court had reserved jurisdiction was "whether you could successfully trace a separate property contribution" to the membership buy-in.

The only witness at the hearing was Stuart Weil, Robert's accounting forensic expert. He testified that members of the Bar Pilots' Association "are the folks who get to guide ships in the San Francisco Bay." He testified that the value of the membership on the date of Barbara and Robert's separation was at least $157,000. He explained that membership in the Bar Pilots' Association is on a "use it or lose it" basis, meaning if "you are not working as a bar pilot, you don't get to own it anymore." Weil testified that the price of a membership buy-out rises and falls based on the collective earned income of the membership as a whole. He opined that after Barbara and Robert's separation, any "increases in value [of the membership] to the marital dissolution should inure" to Robert's benefit because the increase was due solely to Robert's continued postseparation employment as a bar pilot.

Weil provided two alternative valuations of the membership as of the date of the parties' separation. He explained that $157,000 was the amount used in the original divorce proceedings. But in the course of his work on the case, he learned that in 2002 or 2003 the Bar Pilots' Association changed the formula for computing a buy-out. On the assumption that "the formula change is sort of a neutral thing," Weil adjusted the original

3

$157,000 to allow for the formula change, and arrived at the amount of $196,250. On the basis that the community interest in the membership buy-out is $196,250, Weil opined that Robert's "separate property interest is $220,353 and his community property interest [is] one half of $196,250."

The trial court filed its statement of decision on July 16, 2014. In it, the court denied Barbara's claim for separate-property reimbursement, concluding she failed to provide any evidence her separate property was used to purchase the membership buy-in. In dividing the funds received for the membership buy-out, the court credited Weil's testimony by ruling that the community interest in the membership is $196,250,[2] and Barbara's share of that is $98,125. And the court ruled that the remaining balance ($416,603 less $98,125) "shall be distributed to Robert as his share of the community property interest and his separate property (i.e.[,] the increase in value attributed to his post separation efforts."

The trial court then turned to the issue of attorney fees. Robert claimed approximately $25,000 in attorney fees from Barbara on the ground that she had "utterly failed to provide any records to substantiate her claim [of a separate property interest in the membership]—therefore unnecessarily causing him to incur attorney fees in conducting discovery and having this hearing." The court sustained the claim, finding that "Barbara clearly knew she had insufficient information to establish a trace in 2002. It was also clear that she had no additional information/documentation at this time and that she nonetheless continued to pursue this claim. The pursuit of a claim without merit is indeed the kind of act that the court must consider and deter. [Citations.] Accordingly, Barbara shall pay $15,000 in attorney fees to Robert."

---

[2] Thus, the court accepted Weil's alternative $196,250 valuation of the membership at the time of the parties' separation. Although this amount was higher than the $157,000 value agreed upon by the parties at the beginning of the May 21 hearing, the increased valuation benefitted Barbara, and Robert does not challenge it on appeal.

DISCUSSION

A trial court order is presumed to be correct, and "to be successful on appeal, an appellant must be able to affirmatively demonstrate error on the record before the court." (*In re Marriage of Falcone and Fyke* (2008) 164 Cal.App.4th 814, 822.) Moreover, "the appellant has the burden to prove [error] by presenting legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited. [Citations.]" (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655-656.) "It is the appellant's responsibility to support claims of error with citation and authority; this court is not obligated to perform that function on the appellant's behalf. [Citation.]" (*Id.* at p. 656.)

In both her opening and reply briefs, Barbara claims to have been subjected to unfair and unjust rulings by the trial court, but most of her contentions and factual assertions are unaccompanied by citations to legal authority or to the record. Thus, her briefs fail to comport with applicable appellate rules. Even though she is representing herself, we must consider her arguments as if she were represented by an attorney. "When a litigant is appearing in propria persona, he [or she] is entitled to the same, but no greater, consideration than other litigants and attorneys [citations]. Further, the in propria persona litigant is held to the same restrictive rules of procedure as an attorney." (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639, followed in *County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1444.)

Accordingly, we turn to the merits of Barbara's arguments such as they are. Barbara contends the trial court erred in ruling that the increase in the membership's value after the parties' separation was Robert's separate property. She argues that the membership was community property in its entirety because, according to her, the trial court so ruled in its October 2002 order. But Barbara misreads the October 2002 order. In that order, the trial court reserved jurisdiction on the membership as follows: "The Court reserves jurisdiction over this asset, the community interest in which shall be divided equally upon liquidation. If, by the time of liquidation, Wife can successfully trace a separate property contribution, she shall be reimbursed such sum prior to the

5

distribution of the community interest." The plain language of the order is that the community interest in the membership would be divided upon liquidation. But nowhere in the order did the court rule that the entirety of the asset was to be considered community property.

A trial court's finding that property is either separate or community is binding and conclusive on an appellate court if that finding is supported by sufficient evidence or if based upon conflicting evidence or evidence subject to different inferences. (*Beam v. Bank of America* (1971) 6 Cal.3d 12, 25.) Furthermore, a trial court has very broad discretion to fashion an apportionment that is equitable under the circumstances and can conclude that an asset includes both separate and community interests. (*In re Marriage of Hug* (1984) 154 Cal.App.3d 780, 782-783.) And it is black letter law that " 'property attributable to community earnings must be divided equally when the community is dissolved' [citation], while the earnings and accumulations of a spouse after separation are separate property. [Citation.]" (*In re Marriage of Lawson* (1989) 208 Cal.App.3d 446, 449-450.) Here, the trial court's division of the membership buy-out was amply supported by Weil's expert testimony.

Barbara also appeals the trial court's award under section 271 of $15,000 in attorney fees in favor of Robert. Section 271 provides that "the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction." (§ 271, subd. (a).) Section 271 authorizes sanctions " 'to advance the policy of promoting settlement of litigation and encouraging cooperation of the litigants' " and " 'does not require any actual injury.' [Citation.] Litigants who flout that policy by engaging in conduct that increases litigation costs are subject to imposition of attorney fees and costs as a section 271 sanction. [Citation.]" (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225.)

6

We review a sanctions order under section 271 for abuse of discretion. (See *In re Marriage of Corona, supra,* 172 Cal.App.4th at p. 1225.) "Accordingly, we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order. [Citation.] 'We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review.' [Citation.]" (*Id.* at pp. 1225-1226.) Here, the trial court's finding that Barbara continued to pursue her separate-property claim without any additional information to support it is adequately supported in the record. Accordingly, we find no manifest abuse of the trial court's discretion in ordering attorney fees as a sanction under section 271.[3]

DISPOSITION

The judgment is affirmed.

---

[3] Respondent's motion for sanctions, filed on July 23, 2015, against Barbara for having filed a frivolous appeal is denied.

_____
Humes, P.J.

We concur:


_____
Margulies, J.


_____
Dondero, J.


*Pinder v. Pinder* (A143028)

8