Filed 5/11/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of NICOLAS and LISA KELPE. | H045089<br>(Santa Clara County<br>Super. Ct. No. 2012-1-FL-161459) |
| LISA KELPE,<br><br>        Appellant,<br><br>        v.<br><br>NICOLAS CHARLES KELPE,<br><br>        Respondent. | |

In this dissolution proceeding, we address the characterization of a lump-sum cash payment respondent received from a retirement plan upon leaving his employment with an accounting firm after a marital dissolution. As we will explain, we conclude the payment was not an enhanced community benefit derived from the retirement benefits respondent accrued during the marriage. Rather, the payment was an additional benefit respondent acquired when he became a partner in the firm, which occurred after the parties' date of separation. We will therefore affirm the trial court's order characterizing the payment as respondent's separate property.

## I. BACKGROUND

Lisa and Nicolas Kelpe married in 1997 and separated in 2010. The marriage was dissolved in 2013. Respondent was employed as a senior manager with Ernst & Young LLP throughout the marriage before separation. As a non-partner employee, he accrued benefits under a qualified defined benefit retirement plan and a 401(k) plan. In mid-

2012, Ernst & Young offered him an equity partnership in the firm. As a condition of becoming a partner, respondent made a $150,000 capital contribution to the partnership from his post-separation property. He executed the partnership agreement and became an equity partner effective January 1, 2012. As a partner-owner of the firm, respondent received profit distributions instead of a salary.

The partnership agreement offered two deferred compensation retirement plans that were not available to respondent when he was a non-partner employee: the HR-10 Plan and the Top-Hat Plan. Benefits payable under the Top-Hat Plan are based on a formula that factors the average of the three highest fiscal years of partnership earnings and the partner's total years of service. To vest in the Top-Hat Plan, the partner must be at least 58 years old and meet the "Rule of 75" (minimum age of 50 plus total years of service equals 75) or the "Rule of 65" (minimum age of 50 plus service years as a principal/partner equals 65). Partners who separate from the firm before vesting in the Top-Hat Plan are eligible for a lump sum buyout of their interest in the plan, provided they have either 20 years of total service, or 10 years of service as a partner.

Respondent suffered a heart attack in 2014. In October 2015, Ernst & Young requested that he withdraw as a partner, and he resigned from the firm effective December 2015, before vesting in the Top-Hat Plan. Based on 20 years of service with the firm, 13 of which were during the marriage, respondent received under the Top-Hat Plan a single lump-sum payment reflecting "the actuarial equivalent present value of monthly payments that would otherwise be expected to be paid upon retirement, reduced by the monthly accrued benefit to which [he] is entitled under [the defined benefit retirement plan] and Ernst & Young's H.R. 10 Plan." The benefit was calculated at $928,243.

The trial court ruled that the lump-sum payment was respondent's separate property. Relying on *In re Marriage of Brown* (1976) 15 Cal.3d 838 (*Brown*) and *In re Marriage of Frahm* (1996) 45 Cal.App.4th 536 (*Frahm*), the trial court rejected the

argument that respondent's right to receive the benefit accrued during the marriage by virtue of the years of service needed to qualify for the payout, even though he was not a partner and therefore not eligible for the benefit during the marriage. The trial court rejected the notion that respondent's partnership rights accrued during the marriage because of an expectation of advancing to partnership during that time. The court also found respondent was not equitably estopped from claiming the Top-Hat payout as separate property despite a letter from his attorney to the parties' joint expert expressing willingness to treat the asset as having a community component in order to reduce his tax liability and potentially his spousal support obligation.

## II. DISCUSSION

Appellant argues that the Top Hat payout is community property under the time rule applied in *In re Marriage of Gowan* (1997) 54 Cal.App.4th 80 (*Gowan*), and that the trial court should not have relied on *Frahm* to conclude otherwise. We review de novo this predominantly legal question of property characterization. (*In re Marriage of Lehman* (1998) 18 Cal.4th 169 (*Lehman*).)

### A. CONTROLLING AUTHORITIES

Addressing the division of nonvested pension rights in a marital dissolution, the California Supreme in *Brown* explained that pension benefits are a form of deferred compensation for services rendered, and an employee's right to receive such benefits "is a contractual right, derived from the terms of the employment contract." (*Brown*, *supra*, 15 Cal.3d at pp. 841, 845.) Whether or not vested, pension rights represent a property interest, and are acquired by the employee when he or she "enters upon the performance of [the] employment contract." (*Id*. at pp. 842, 845.) To the extent pension benefits derive from employment during marriage before separation, they are a community asset subject to division in a dissolution proceeding. (*Ibid*.)

In *Lehman*, the Supreme Court addressed the characterization of a post-dissolution early retirement incentive which enhanced a defined benefit retirement plan under which

3

the employee spouse had accrued benefits both during and after marriage. (*Lehman*, *supra*, 18 Cal.4th at pp. 174–175.) Several years after the marriage dissolved, the employee spouse accepted an early retirement incentive which added three putative years of service under the plan and waived an early-retirement penalty. (*Id*. at p. 175.) The *Lehman* court rejected the employee spouse's argument that the community did not have an interest in the "retirement benefit[] as enhanced through a postseparation 'contract' between the employee spouse and the employer independent of any right to [the] retirement benefit[] that accrued, in some part, during marriage before separation." It likened the enhancement to consideration given for immediate retirement. (*Id*. at p. 185.) The *Lehman* court explained that the actual amount realized from a community retirement asset may be affected by post-separation events or conditions, including changes in the retirement-benefit formula as well as the basis on which the formula operates, such as the employee's age, years of service, and final salary. (*Id*. at p. 178.) The retirement incentive in *Lehman* was not a severance payment or tantamount to one, but "derivative of the right to retirement benefits that accrued, in some part, during marriage before separation." (*Id*. at pp. 185–186.) It was no different than a benefit enhanced through additional years of service, an increase in earnings, or an increase in age. (*Id*. at p. 185.) "By its very terms, it results from 'improvements to the retirement benefit formula' under [the employer's] existing defined benefit retirement plan, not from a new plan altogether." (*Id*. at p. 186.)

The *Lehman* court found no abuse of discretion in the trial court's application of the time rule to apportion the pension benefits between the community and the employee spouse's separate property interests. (*Lehman*, *supra*, 18 Cal.4th at p. 187.) Use of the time rule, which calculates the relative interest of the community as the ratio of the employee spouse's length of service during marriage before separation to the employee spouse's total length of service, is not unreasonable where the " 'amount of the retirement benefits is substantially related to the number of years of service.' " (*Ibid.*)

In *Frahm*, decided two years before *Lehman*, an interlocutory dissolution judgment awarded the nonemployee spouse half of the community's interest in the employee spouse's retirement benefit accrued during marriage. (*Frahm*, *supra*, 45 Cal.App.4th at pp. 537–538.) After several years of continued service, the employee spouse accepted a voluntary severance cash incentive and retired early. (*Id*. at p. 538) The appellate court rejected a "past services or future compensation test" other courts had used to determine the character of the cash benefit because that test was inconsistent with the principles set forth in *Brown*, which we have already discussed. (*Id*. at p. 543.) The *Brown* court made clear that "[a]n employment benefit … is community property to the extent a right to it accrues during marriage." (*Id*. at p. 544.) The severance payment in *Frahm* was not a right that accrued during marriage; it was not "ancillary to … those employment rights which were earned during marriage" but was additional to those rights. (*Ibid*.) The *Frahm* court noted that although the amount of the payment was "somewhat dependent on the length of employment, *the right* to receive it was not," and for that reason the relationship between the incentive payment and the employee's years of service was irrelevant. (*Id*. at pp. 544–545, & fn. 2.) The non-employee "received her community property interest in the employment benefits which accrued during and derived from the time of marriage." (*Id*. at p. 545.) The Supreme Court approved of the analysis in *Frahm* because it "cleave[d] closely to *Brown*." (*Lehman*, *supra*, 18 Cal.4th at p. 183.)

The marriage in *Gowan* was dissolved after the employee spouse left a company where he had worked for several years. (*Gowan*, *supra*, 54 Cal.App.4th at p. 84.) The dissolution judgment characterized the employee spouse's retirement benefits as community property, and the trial court retained jurisdiction "over the subject matter." (*Ibid*.) The employee spouse rejoined the company several years after the marriage ended and worked for an additional five years before retiring. (*Ibid*.) The *Gowan* court rejected the employee spouse's arguments that both the dissolution judgment and the

parties' underlying stipulation limited the trial court's retained jurisdiction to the retirement benefits as they existed at the time of dissolution. (*Id*. at pp. 86–88.) The appellate court rejected the employee spouse's factual argument against applying the time rule to the combined pension—that the reinstated service credits were specially negotiated as part of his second employment contract and unrelated to his earlier service—finding substantial evidence that the employee spouse's pension was based on both periods of credited service. (*Id*. at p. 89.) The *Gowan* court also rejected the argument that the time rule did not apply where there is a break in service. "The rationale for the time rule applies wherever the *total number of years served* by the employee spouse (continuous or otherwise) is a substantial factor in computing the retirement benefits." (*Id*. at p. 90.)

## B.   THE TOP-HAT PLAN PAYMENT IS RESPONDENT'S SEPARATE PROPERTY

This appeal is governed by the seminal rule in *Brown* that an employee's right to receive retirement benefits "is a contractual right, derived from the terms of the employment contract" and the employee spouse acquires the right when embarking upon the contract. (*Brown*, *supra*, 15 Cal.3d at p. 845.) The rule was applied in *Lehman* to recognize the community interest in an early retirement incentive "result[ing] from 'improvements to the retirement benefit formula' under [the employer's] existing defined benefit retirement plan." (*Lehman*, *supra*, 18 Cal.4th at p. 186.) And it was applied by the *Frahm* court to characterize as the employee spouse's separate property a severance payment unrelated to the retirement benefits acquired and accrued during marriage. (*Frahm*, *supra*, 45 Cal.App.4th at p. 544.) It is undisputed that respondent acquired a property interest in the Top-Hat Plan as part of and upon the commencement of his partnership agreement in 2012, after he and appellant had separated. Respondent was not eligible for the Top-Hat Plan until his post-separation entry into the partnership, so there is no way the community could have acquired or accrued an interest in the plan. As a distinct and separate benefit available only to partners, the Top-Hat Plan was in addition

6

to and not derivative of the retirement benefits available to respondent while a non-partner employee. The Top-Hat Plan may have "enhanced" respondent's overall retirement portfolio, but it was a stand-alone contractual benefit.

We reject the argument that respondent's right to receive the Top-Hat partnership benefit accrued during the marriage because he "needed to count the 13 years of community service to qualify for any benefits under the plan." The trial court correctly concluded that even where a benefit is dependent in part on total years of service accrued during marriage, if the contractual right to the benefit is not acquired until after separation, the benefit is separate property. (See *Frahm*, *supra*, 45 Cal.App.4th at pp. 544–545.) Appellant argues that *Frahm* is distinguishable because that case involved a cash incentive payment offered by the employer in order to reduce its workforce in response to changing business conditions. But the Supreme Court has made clear that an employer's motive for offering a severance incentive is not relevant to the asset's characterization as community versus separate property (*Lehman*, *supra*, 18 Cal.4th at p. 180), even when a severance payment is characterized as a beneficent act on the part of the employer. (*Id*. at p. 182, fn. 6.) What is crucial according to *Frahm* is that the right to the payment accrued by contract at the time the incentive was offered, and not during the time when the employee spouse acquired and accrued retirement benefits.

The time rule appellant relies on is not used " '[to] determine the character of [a] benefit' " as community or separate property. (*Lehman*, *supra*, 18 Cal.4th at pp. 182–183.) The Supreme Court has made clear that the time rule is employed *to apportion* retirement benefits between the community and the employee spouse when the benefits are earned both during and after marriage. (*Id.* at p. 187; accord *Gowan*, *supra*, 54 Cal.App.4th at p. 88.) The time rule does not apply here because the Top-Hat benefit is entirely respondent's separate property, having accrued in 2012 after the parties had separated.

7

*Gowan* is not dispositive of this appeal. That case addressed a single pension plan with service credits drawn from two employment periods. (*Gowan*, *supra*, 54 Cal.App.4th at p. 89.) In contrast, the Top-Hat Plan did not reinstate service credits in a unitary pension. It involved a separate retirement benefit accrued by respondent under his post-separation partnership agreement. Appellant's other authorities are also distinguishable. *In re Marriage of Gram* (1994) 25 Cal.App.4th 859, 866–867, and *In re Marriage of Davis* (2004) 120 Cal.App.4th 1007, 1015–1017, involved enhancements to existing retirement plans. The Supreme Court emphasized in *Lehman* that the determinative factor in *Gram* was that the employee spouse accrued the right to the benefits during marriage. (*Lehman*, *supra*, 18 Cal.4th at p. 183.) And *In re Marriage of Worth* (1987) 195 Cal.App.3d 768 did not involve a retirement benefit, but addressed a former spouse's entitlement to the proceeds from a copyright infringement lawsuit based on books written and published by the other spouse during the marriage, whose royalties were community property. (*Id*. at pp. 771–773.)

### III.  DISPOSITION

The May 2, 2017 order characterizing the Top-Hat Plan payment as respondent's separate property is affirmed. Respondent shall recover his costs on appeal.

_____

Grover, J.

**WE CONCUR:**

_____

Elia, Acting P. J.

_____

Danner, J.

**H045089 -** *Kelpe v Kelpe*

| Trial Court: | Santa Clara County Superior Court<br>Superior Court Case No. 2012-1-FL-161459 |
| --- | --- |
| Trial Judge: | Hon. Cynthia C. Lie |
| Counsel for Plaintiff/Appellant Lisa Kelpe: | Rebekah A. Frye<br>  Law Offices of Rebekah A. Frye<br><br>Gregory R. Ellis<br>  Law Offices of Gregory R. Ellis |
| Counsel for Defendant/Respondent: | Robert A. Roth<br>Kelly Ann Woodruff<br>  California Appellate Law Group |

**H045089 - *Kelpe v. Kelpe***